79 A.3d 543

**Philip PAYES, Appellant**

v.

**WORKERS' COMPENSATION APPEAL BOARD (Commonwealth PA STATE POLICE), Appellee.**

Supreme Court of Pennsylvania.

Argued April 11, 2012.

Decided Oct. 30, 2013.

566

Quintes D. Taglioli, Esq., Markowitz & Richman, Allentown, for Philip Payes.

Amber Marie Kenger, Esq., Richard C. Lengler, Esq., Workers Compensation Appeal Board, for Workers Compensation Appeal Board.

James A. Mazzotta, Esq., Fried, Kane, Walters, Zuschlag & Grochmal, Pittsburgh, for State Police.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice McCAFFERY.

Allowance of appeal was granted so that this Court could determine whether the Commonwealth Court erred by affirming the reversal by the Workers' Compensation Appeal Board ("WCAB") of the decision of a workers' compensation judge ("WCJ") that granted the claim petition of Appellant, Philip Payes. The WCJ had determined that Appellant was entitled to workers' compensation disability benefits based on factual findings that Appellant established the existence of a mental disability that had been caused by abnormal working conditions. We now conclude that it was error to reverse the WCJ's decision, and we accordingly reverse the order of the Commonwealth Court.

The factual background is largely undisputed. Appellant was a trooper with the Pennsylvania State Police ("State Police") and had worked for the State Police for approximately twelve years prior to the incident in question, which occurred on November 29, 2006. At approximately 5:45 a.m. on that date, while it was dark, Appellant was driving his patrol car on Interstate 81 en route to his barracks.[1] A woman dressed all

---

1. Appellant was travelling to his barracks to commence the last shift of a "double-back" assignment. A "double-back" requires a trooper to work one shift, return home in the patrol car and in uniform to rest during the next shift, and then to return to work for the third shift, again in uniform and driving the patrol car. Thus, a "double-back" differs from the more typical assignment that requires the trooper to commute to work in civilian clothes and in his or her own vehicle, work a shift, and then leave work in civilian clothes and in the private vehicle until his or her next scheduled shift. The WCJ found that Appellant

in black, including a black hat or cap, suddenly ran in front of, and was struck by, Appellant's patrol car. The woman flipped over the vehicle and landed on the highway. Appellant immediately pulled his car around into the traffic lane and rushed to attend to the woman. Appellant began giving her mouth-to-mouth resuscitation as she bled from the mouth. At the same time as he was attempting to revive the injured woman, Appellant had to divert oncoming traffic from hitting him and the woman. The incident was caught on film by a camera mounted in Appellant's patrol car, and, in accordance with State Police procedure, a DVD was made of the incident, which DVD was later admitted into evidence by the WCJ.

Following Appellant's request for assistance, other troopers arrived at the incident site. The woman could not be revived and was pronounced dead at the scene. It was later discovered that she suffered from mental illness and had been seen by several drivers walking up and down the area adjacent to Interstate 81 prior to the incident. Appellant was transported from the scene to a hospital for testing and treatment connected to his exposure to the deceased woman's blood.

Appellant was permitted to be off work until January 2, 2007. On that date, he returned to work but performed office work rather than his normal patrol duties. After working four days, however, Appellant's recurring feelings of anxiousness and stress led him to believe that he could not continue to perform his duties as a state trooper. Appellant has not returned to work since January 5, 2007.

Appellant sought workers' compensation benefits, but the State Police filed two notices of Workers' Compensation Denial ("NCD"), the first on December 8, 2006, and the second, as amended, on February 6, 2007. The first NCD asserted that although an injury had occurred, Appellant was not disabled as a result of it. However, it did provide that expenses for medical treatment reasonably related to Appellant's exposure to the deceased's woman's blood would be paid. The second NCD asserted that Appellant had not been injured while in

was on duty at the time of the incident, a finding supported by evidence of record and not challenged on appeal.

the scope of his employment and specifically rejected any claim for post-traumatic stress. However, and somewhat contradictorily, this NCD also continued to accept responsibility for medical treatment related to Appellant's exposure to blood.

On August 6, 2007, Appellant filed a claim petition alleging that he suffered from post-traumatic stress disorder ("PTSD") as a result of the November 29, 2006, incident, and he sought full disability benefits, medical expenses, and counsel fees. The State Police filed an answer denying Appellant's material allegations, and a hearing was scheduled before a WCJ.

At the hearing, Appellant testified and presented the supporting medical expert testimony of a psychiatrist and a psychologist, both of whom diagnosed Appellant as being temporarily totally disabled because of PTSD, which disorder had arisen directly from the November 29, 2006, incident. The State Police presented the testimony of Major Steven McDaniel, the Commander of Area 1, who testified about police cadet training regarding stress management, standards for State Police response to automobile accidents, and State Police practice of rendering first aid at a crash site. Major McDaniel also testified regarding an incident of which he was aware where another State Trooper had struck and killed an individual who had dashed in front of his patrol vehicle. Major McDaniel testified that he had given the name of this State Trooper to Appellant in case Appellant desired to contact him. The State Police also presented the testimony of their own psychiatric expert, who opined that Appellant had fully recovered from any PTSD related to the incident, and presently suffered only from mental conditions that pre-existed the November 29, 2006, incident. Two other troopers testified regarding Appellant's job duties and his failed attempt to return to his work duties after the incident.

The WCJ found Appellant's and Major McDaniel's respective testimonies to be credible and further found the testimony of Appellant's psychiatric expert witnesses to be more credible than that of the psychiatric expert witness presented by the State Police. Based on these credibility findings, the WCJ

determined that Appellant had proven a mental injury arising from a work-related mental stimulus. The WCJ further found that, although state troopers may expect to encounter or be involved with violent situations, the particular work-related mental stimulus here was not one normally encountered by or expected of state troopers, as illustrated by the following relevant findings of fact:

12. State Troopers such as [Appellant] are exposed to vehicle accidents, mayhem, bodily injuries, death, murder, and violent acts in the normal course of their duties.

13. State Troopers are **not** in the normal course of their duties exposed to the circumstances that occurred in this case; to wit[,] a mentally disturbed individual running in front of a Trooper's vehicle while he is operating the vehicle, for no apparent reason. Further, what occurred at the point of impact and immediately thereafter are not working conditions which normally occur for State Troopers[: Appellant's] attempted but failed resuscitation of the woman he killed on Interstate 81 while vehicular traffic [was] oncoming, waiting for assistance from other troopers.

WCJ Decision, dated 10/24/08, at 3–4, Findings of Fact Nos. 12–13 (emphasis added).

Based on his relevant factual findings, the WCJ determined that Appellant's mental injury was caused by an abnormal working condition, making the mental injury and resultant disability compensable under the Act.[2] The WCJ reasoned:

[W]hile state troopers such as [Appellant] are exposed to death, murder, severe personal injury, crimes, and other violent activities, the circumstances of the present case which occurred directly to [Appellant] when the victim darted in front of his vehicle, and the events which occurred immediately when he attempted to save her life, were not normal for a state trooper but instead were extraordinary and unusual events.

WCJ Decision at 8, Conclusion of Law No. 5.

Following appeal by the State Police, the WCAB reversed the WCJ's grant of Appellant's claim petition, stating:

2. *See* discussion *infra.*

"[W]hile being involved in a fatal accident may be traumatic and not routine for a state trooper, we cannot agree that this incident constitutes an abnormal working condition given the nature of [Appellant's] stressful and perilous profession." WCAB Decision, dated 2/22/10, at 11. The WCAB further stated:

> [Appellant] agreed that being exposed to traumatic and dangerous situations and to death and trauma was a normal part of his job as a state trooper. Although he testified that he never thought he would be involved in someone's death, he did admit he was trained at the academy in the use of deadly force[,] among other things. While he stated he never heard of this kind of event happening to anyone else on the job, Major McDaniel credibly testified that a member of the department had a similar situation years ago where someone ran in front of a patrol car and was struck and killed, and he provided [Appellant] with that person's contact information. Thus, encounters involving fatalities were a foreseeable part of the job and not an unheard of occurrence.

*Id.* at 12–13.

In a published opinion, the Commonwealth Court affirmed the WCAB's decision, holding as a matter of law that Appellant's injury did not result from an abnormal working condition. *Payes v. Workers' Compensation Appeal Board (Commonwealth of PA/State Police)*, 5 A.3d 855 (Pa.Cmwlth.2010). Specifically, the court held:

> [Appellant], who works "in the line of employment" of a police officer, can be expected to be witness to horrible tragedy. This includes, as acknowledged by [Appellant], responding to motor vehicle accidents in an emergency capacity. Undoubtedly, in so doing, he may be subjected to traumatic visuals such as injured children, maimed adults, and, unfortunately, death. These events will not be deemed "extraordinary" or "abnormal." **Indeed, it is not beyond the realm of possibility for an officer to have to take someone's life.**

The instant fact pattern began with the **ordinary task** of [Appellant] driving to the station to begin the second leg of his double-back shift. [Appellant] did strike a woman with his vehicle, but responded to the emergency situation just as he would have responded to any other accident scene. [Appellant's] attempt at mouth-to-mouth [sic] on a woman who was bleeding from that area may be an unusual event for the average citizen, but it does not appear extraordinary for a police officer. Regrettably, a person dying following a failed attempt at resuscitation is something that can be expected to occur in a police officer's line of work. **But for the part that [Appellant] was the one who struck the woman with his vehicle,** there would be no question that any resulting psychological injury would not be compensable. This fact, however, does not take [Appellant's] mental injuries that would ordinarily be noncompensable and render an award of benefits appropriate.

... The events that occurred on November 29, 2006 **may have been unusual, but they were not so much more stressful and abnormal than the already highly stressful nature of [Appellant's] employment to render an award of benefits appropriate.** ... Any mental injury results [sic] from an event that was subjectively abnormal for [Appellant].

... Even if Major McDaniel knew of the only other incident where an officer struck another individual with his patrol car, the facts as a whole show **the relative "ordinary" nature of the events that transpired in this case.** Police officers are involved in a highly stressful profession and are required to, and do, respond to emergency situations as part of their duties. Traumatic events are not out of the ordinary for a police officer and, at times, attempts at saving a life fail.

*Id.* at 861–62 (emphases added; citations omitted).

On appeal from the Commonwealth Court's decision, Appellant argues that the Commonwealth Court erred by ignoring the WCJ's factual findings regarding the singular nature of the event that had triggered the onset of his disabling PTSD.

Appellant points out that all tribunals below determined that this event was "unusual," but the Commonwealth Court and the WCAB nonetheless determined that this "unusual" event was actually "not abnormal." Appellant also criticizes the Commonwealth Court and the WCAB for likening the event that caused his disability to disconnected hypotheticals that are considered normal police matters, such as violent confrontations with suspects that result in the suspect's death, or investigations of and assistance at scenes where individuals have been injured or killed. In essence, Appellant argues that it was error for the court to disregard the total, singular nature of the event, as found by the WCJ, and to analyze the event as a series of unrelated component parts. Along these lines, Appellant emphasizes that the WCJ specifically found that the decedent "intended to kill herself by running in front of [Appellant's] vehicle." WCJ Decision at 3, Finding of Fact No. 10. Appellant asserts that the Commonwealth Court also ignored this factual finding. Appellant further asserts that the triggering incident was an unmistakable episode of "suicide by cop;" however, the WCJ specifically found that the evidence of "suicide by cop" was inconclusive. *Id.*

In response, the State Police argue that its troopers are trained and expected to deal with stressful situations, and that Appellant simply experienced a stressful event that fell within his duties as a police officer, to wit, responding to traffic accidents and fatalities, providing first aid, and investigating serious and violent injuries. The State Police also contend that the idea of "suicide by cop" is not unheard of and, thus, is not an abnormal working condition for police officers. It further contends that police officers are expected to deal with suicides and inadvertent deaths. Although the State Police admit that the triggering event here was "unusual," they also contend that this event was not that far removed from a police officer's expected duties.

 "In workers' compensation appeals, this Court must affirm the adjudication below unless we find that an error of law was committed, that constitutional rights were violated, that a practice or procedure of a Commonwealth agency was

not followed or that any necessary finding of fact is not supported by substantial evidence of record." *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 574 Pa. 61, 828 A.2d 1043, 1046 (2003); *see also* 2 Pa.C.S. § 704. Issues concerning whether the Commonwealth Court erroneously determined the existence or non-existence of an abnormal working condition in a workers' compensation mental injury case have been described generally as questions of law, triggering a *de novo* standard and plenary scope of review. *Panyko v. Workers' Compensation Appeal Board (U.S.Airways)*, 585 Pa. 310, 888 A.2d 724, 729 (2005). However, as explored in more depth *infra*, issues involving mental or psychic injuries are also highly sensitive to the factual circumstances of the case. *See, e.g., Wilson v. Workmen's Compensation Appeal Board (Aluminum Company of America)*, 542 Pa. 614, 669 A.2d 338, 343 (1996); *see also RAG (Cyprus) Emerald Resources, L.P. v. Workers' Compensation Appeal Board (Hopton)*, 590 Pa. 413, 912 A.2d 1278, 1284 n.6 (2007) ("[A]ppellate review of this question [is] a two-step process of reviewing the factual findings and then the legal conclusion."). It thus may be more accurate to state that the existence of a compensable mental or psychic injury is, for the reviewing court, a mixed question of law and fact.[3]

**3.** The Commonwealth Court has long characterized the question of whether a claimant has been exposed to abnormal working conditions as a mixed question of law and fact reviewable on appeal. *See Daneker v. Workers' Compensation Appeal Board (White Haven Center)*, 757 A.2d 429, 433 (Pa.Cmwlth.2000); *Donovan v. Workers' Compensation Appeal Board (Academy Medical Realty)*, 739 A.2d 1156, 1162 (Pa.Cmwlth. 1999); *Gulick v. Workers' Compensation Appeal Board (Pepsi Cola Operating Co.)*, 711 A.2d 585, 587 (Pa.Cmwlth.1998); *Jeanes Hospital v. Workmen's Compensation Appeal Board (Miller)*, 141 Pa.Cmwlth. 308, 595 A.2d 725, 728 (1991). Indeed, members of this Court have endorsed this characterization as well. *City of Philadelphia v. Workers' Compensation Appeal Board (Brasten II)*, 556 Pa. 400, 728 A.2d 938, 941 (1999) (Opinion in Support of Reversal) (*per* Justice Nigro, joined by then-Justice Castille and Justice Newman).

In *RAG (Cyprus) Emerald Resources, L.P. v. Workers' Compensation Appeal Board (Hopton)*, 590 Pa. 413, 912 A.2d 1278 (2007), we acknowledged that the Commonwealth Court considered the issue as one of a mixed question of law and fact reviewable on appeal. However, we did not conclude that the Commonwealth Court was in error as to that matter. Instead, we proceeded to discuss the particular manner by

This Court has generated a fair body of law devoted to the issue of how tribunals are to approach and analyze work-related mental or psychic injuries under the Workers' Compensation Act ("Act").[4] Because we determine that the Com-

which the inquiry should be conducted—a standard that we do not depart from in this opinion—as follows:

> The Commonwealth Court referred to the determination of whether working conditions are abnormal as a mixed question of fact and law. [*RAG (Cyprus) Emerald Resources, LP v. Workers' Compensation Appeal Board (Hopton)*, 850 A.2d 833, 837 (Pa.Cmwlth.2004). While we repeatedly have held that the ultimate determination of whether the employee established "abnormal working conditions" is a question of law fully reviewable on appeal, we have also acknowledged that "psychic injury cases are **highly fact-sensitive** and for actual working conditions to be considered abnormal, they must be considered in the context of specific employment." *Wilson v. WCAB (Aluminum Co. of Am.)*, 542 Pa. 614, 669 A.2d 338, 343 (1996), *see also Davis* [*v. Workers' Compensation Appeal Board (Swarthmore Borough)*], 561 Pa. 462, 751 A.2d 168, 174 (2000)]. Such a fact-sensitive inquiry requires deference to the fact-finding functions of the WCJ and, accordingly, we limit our review of those factual findings to determining whether they are supported by the evidence and overturn them only if they are arbitrary and capricious. *Id.* Thus, as discussed *infra*, we view the appellate review of this question as a two-step process of reviewing the factual findings and then the legal conclusion.

*Id.* at 1284 n. 6 (emphasis supplied).

What we described in *RAG* as the appropriate approach to the question of determining whether abnormal working conditions were present is remarkably similar to this Court's articulation of the approach a court takes when reviewing mixed questions of law and fact, as follows:

> The question concerns what level of deference should be given to the lower tribunal, and the answer must be evaluated on a case-by-case basis because **certain mixed questions are more heavily weighted toward fact**, while others are more heavily weighted toward law. **The more fact intensive the inquiry, the more deference a reviewing court should give to the findings below.**

*Gentex Corp. v. Workers' Compensation Appeal Board (Morack)*, 611 Pa. 38, 23 A.3d 528, 534 n. 10 (2011) (emphases added) (noting that the workers' compensation case then under review presented a mixed question of fact and law because it required the Court to construe a section of the Workers' Compensation Act and also to conclude whether the facts showed that adequate notice had been given).

We thus respectfully disagree with the responsive opinions to the extent that they voice a concern that we are effectively departing from the established standard in workers' compensation cases that concern the question of whether abnormal working conditions were present.

4. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4; 2501–2626.

monwealth Court here strayed beyond certain foundational precepts, a brief review of this law is required.

■ Following the 1972 legislative amendments to the Act, the Act has been interpreted as allowing for compensation for mental as well as physical work-related injuries. *Panyko, supra* at 730. For purposes of determining compensation under the Act, mental or psychic injuries are divided into three categories: mental-mental, whereby a mental or psychic condition is caused by a psychic stimulus; mental-physical, whereby a psychic injury manifests itself in some physical form; and physical-mental, whereby a physical injury results in psychic distress. *See id.* at 730–31 n. 9. In this case, Appellant has asserted the occurrence of a mental-mental injury.

■ Concerns regarding the potential for abuse and the Act's firm requirement that there be a link between an employee's injury and his or her job led to the judicial determination that additional proof for claims of an injury caused by a work-related mental or psychic stimulus were warranted, namely, the requirement that the claimant demonstrate that the injury resulted from "abnormal working conditions." *Martin v. Ketchum, Inc.,* 523 Pa. 509, 568 A.2d 159, 164 (1990). As we stated:

[W]e note that the concerns that caused this Court to adopt the abnormal working conditions test in cases where a claimant suffers a psychic injury are not present in cases where a claimant suffers a purely physical injury, such as a heart attack, angina, or colitis. Indeed, unlike psychic injuries, purely physical injuries are usually objectively verifiable and can ordinarily be traced to an identifiable source. Thus, a physical injury's relationship to the workplace is easier to discern than that of a psychic injury, which, by its nature, is inherently subjective. *Compare Krawchuk* [*v. Phila. Electric Co.,* 497 Pa. 115, 439 A.2d 627, 628–29 (1981) ] (evidence showed that decedent was working and under heavy stress at time he suffered his heart attack), with *Thomas* [*v. Workmen's Compensation Appeal Board,*

55 Pa.Cmwlth. 449, 423 A.2d 784, 787 (1980) ] (evidence was unclear as to whether claimant's psychic injury in 1975 was related to work-related events years earlier). Further, given the objective nature of physical injuries, they are less likely than psychic injuries to be either subject to manipulation or simply the result of a "subjective reaction to normal working conditions."

*Panyko, supra* at 732 (citation omitted).

Accordingly, the "abnormal working conditions" requirement was instituted because this Court, and the Commonwealth Court previously,[5] recognized "the need to distinguish psychiatric injuries that are compensable because the necessary causal relationship between the employment and mental disability has been established[,] from those psychiatric injuries that arise from the employee's subjective reactions to normal working conditions." *RAG, supra* at 1287 (citation and quotation marks omitted). As we observed in the context of a direct challenge to the requirement that a claimant must prove abnormal working conditions:

Abandoning the distinction between normal and abnormal working conditions, as the Appellant urges us to do, would eliminate the element of causation. It would destroy the fundamental principle underlying the scheme of the [Workers'] Compensation Act—that, in order to be compensable, an injury must be work-related. Under the Appellant's theory, a claimant would have to establish only that the employee suffered from a mental illness while employed and that the illness was a condition created or aggravated by that employee's **perception** of the conditions of his employment. That would reduce [workers'] compensation benefits to nothing more than a disability or death benefit payable only because of the employee status of the claimant—and not because the injury was caused by his employment.

*Martin, supra* at 165 (emphasis added).

Since *Martin* (the foundational decision of this Court in this field), "[w]e have consistently rejected the argument that

5. *See, e.g., Thomas, supra* at 787.

proof that a psychic injury was caused by normal working conditions establishes a compensable injury under the Act." *Davis v. Workers' Compensation Appeal Board (Swarthmore Borough)*, 561 Pa. 462, 751 A.2d 168, 177 (2000) (discussing, in order, *Wilson, supra; Pennsylvania Human Relations Commission v. Workmen's Compensation Appeal Board (Blecker)*, 546 Pa. 83, 683 A.2d 262 (1996), *Ryan v. Workmen's Compensation Appeal Board (Community Health Services)*, 550 Pa. 550, 707 A.2d 1130 (1998); *Philadelphia Newspapers, Inc. v. Workmen's Compensation Appeal Board (Guaracino)*, 544 Pa. 203, 675 A.2d 1213 (1996); and *Hershey Chocolate Co. v. Workmen's Compensation Appeal Board (Lasher)*, 546 Pa. 27, 682 A.2d 1257 (1996)). Indeed, we observed:

> *Martin* and its progeny reflect the view that there is a degree of uncertainty inherent in any employment situation, as in life itself, such that an employee's individual, subjective reaction to these **ordinary vicissitudes** is not the type of condition which the legislature intended to require compensation for because it is not, in the common understanding, an injury.

*Davis, supra* at 177 (emphasis added).

■ Moreover, "even if a claimant adequately identifies actual (not merely perceived or imagined) employment events which have precipitated psychiatric injury, the claimant must still prove the events to be abnormal before he [or she] can recover." *Hershey Chocolate, supra* at 1260 (quoting *Wilson, supra* at 344).

■ Although the ultimate determination of whether an employee has established "abnormal working conditions" is a question of law reviewable on appeal, this Court has also stressed that "psychic injury cases are **highly fact-sensitive**[,] and for actual working conditions to be considered abnormal, they must be considered in the context of specific employment." *Wilson, supra* at 343 (emphasis added); *see also Davis, supra* at 174. "Such a fact-sensitive inquiry requires deference to the fact-finding functions of the WCJ and, accordingly, ... review of those factual findings [is limited] to

determining whether they are supported by the evidence and [these findings may be] overturn[ed] only if they are arbitrary and capricious. Thus, . . . appellate review of this question [is] a two-step process of reviewing the factual findings and then the legal conclusion." *RAG, supra* at 1284 n. 6.

With respect to the requirement that mental injuries "be considered in the context of specific employment," *Wilson, supra* at 343, we have stated as follows:

In classifying working conditions as normal or abnormal, we do not employ a bright line test or a generalized standard, but instead, consider the specific work environment of the claimant; for we recognize that what may be normal for a police officer will not be normal for an office worker. Consequently, we deny compensation for injuries resulting from events that **are expected** in the relevant working environment, whether it is an office worker's change in job title or responsibility . . . or **a police officer's involvement in life-threatening situations.**

*RAG, supra* at 1288 (citations omitted; emphases added).

Police officers have been awarded compensation for work-related mental-mental injuries. *See City of Pittsburgh v. Logan*, 570 Pa. 500, 810 A.2d 1185 (2002) (holding that a police officer's working conditions were objectively abnormal where a street gang, in retaliation for the officer killing a gang member in a shootout, placed a bounty on the life or health of the officer and his family); and *Borough of Beaver v. Workers' Compensation Appeal Board (Rose)*, 810 A.2d 713 (Pa. Cmwlth.2002) (holding that an officer who was subjected to false accusations by the chief of police, public airing of those accusations, suspension, termination, and stripping of his duties and authority upon reinstatement and deliberate ostracism instigated by the chief, was exposed to abnormal working conditions, not events that were inherent in police work).

Police officers have also been denied benefits for work-related mental-mental injury claims. *See Rydzewski v. Workers' Compensation Appeal Board (City of Philadelphia)*, 767 A.2d 13 (Pa.Cmwlth.2001) (where benefits for a mental-mental

injury were ultimately denied to the claimant, a City of Philadelphia police officer, who responded to a call to assist two other officers who had been shot and were seriously injured, because the claimant had not proven that his experience constituted an abnormal working condition for a person in his line of work); *Young v. Workers' Compensation Appeal Board (New Sewickley Police Department)*, 737 A.2d 317, 322 (Pa.Cmwlth.1999) (where benefits for a mental-mental injury were ultimately denied to the claimant, a township police officer, because the stand-off event in which he had been involved was not an abnormal working condition for a police officer, but rather was one of "certain stressful and even life-threatening events and occurrences [that] are expected and anticipated due to the nature of the employment"); *City of Philadelphia v. Workers' Compensation Appeal Board (Brasten II)*, 556 Pa. 400, 728 A.2d 938, 941 (1999) (where our evenly divided Supreme Court affirmed the Commonwealth Court's decision that the claimant, a City of Philadelphia police sergeant, who had shot and killed an unarmed suspect and had then undergone a grand jury investigation, indictment, trial and media attention, had not proven a basis for recovery for a mental-mental injury because his claim of mental injury stemmed not from his police activities but from the indictment, trial, and media attention, which were determined, by the opinion in support of affirmance, to be only "tangentially related" to his work); and *Parson v. Workmen's Compensation Appeal Board (Springettsbury Township)*, 164 Pa. Cmwlth. 165, 642 A.2d 579 (1994) (where benefits for a mental-mental injury were denied to the claimant, a township police officer, because an eight-hour incident involving him, other officers, and a barricaded gunman, did not rise to the level of abnormal working conditions).

In this case, the cornerstone of the WCJ's decision is its Finding of Fact No. 13, which, once again, states:

13. State Troopers are not in the normal course of their duties exposed to the circumstances that occurred in this case; to wit[,] a mentally disturbed individual running in front of a Trooper's vehicle while he is operating the vehicle,

for no apparent reason. Further, what occurred at the point of impact and immediately thereafter are not working conditions which normally occur for State Troopers[: Appellant's] attempted but failed resuscitation of the woman he killed on Interstate 81 while vehicular traffic is oncoming, waiting for assistance from other troopers.

WCJ Decision at 3–4, Finding of Fact No. 13.

██ First, one of the difficulties with the Commonwealth Court's and the WCAB's separate determinations is that this factual finding, based on undisputed evidence of a singular, extraordinary event occurring during Appellant's work shift, was founded on substantial evidence of record. Neither the Commonwealth Court nor the WCAB determined that this factual finding was unsupported by the evidence or was arbitrary and capricious, as is required in order to set it aside. *See RAG, supra* at 1284 n. 6. Second, this factual finding fully supports the WCJ's legal conclusion that Appellant's injury stemmed from an abnormal working condition.

However, the Commonwealth Court—like the WCAB— came to the legal conclusion that Appellant was not injured by abnormal working conditions. As Appellant points out, it did so by effectively reformulating Finding of Fact No. 13 into unrelated component parts, where each part, standing on its own, might be safely determined to be a "normal" working condition for a police officer. Thus, the Commonwealth Court noted that Appellant, as a police officer, "can be expected to be witness to horrible tragedy," including the human carnage resulting from "motor vehicle accidents." *Payes, supra* at 861. Along these lines, the court opined that a police officer could expect to come across "injured children, maimed adults, and, unfortunately, death." *Id.* However, this viewpoint was set forth without any acknowledgement that the WCJ had found the factual scenario of the instant case to be of a completely different nature. *Compare* WCJ Decision at 3, Finding of Fact No. 12, *with* WCJ Decision at 3–4, Finding of Fact No. 13. The Commonwealth Court also asserted: "Indeed, it is not beyond the realm of possibility for an officer to have to take someone's life." *Id.* However, the court plainly

meant here that a police officer might be called upon to take the life of a suspect during the course of a physical struggle in furtherance of upholding the law and ensuring the peace. Being a potentiality with no relation to what happened in this case, however, it represents a false analogy.[6]

The Commonwealth Court then viewed the factual finding that Appellant had rendered ultimately unsuccessful first aid to the decedent as an effectively isolated event, disconnected from the fact that Appellant had been the inadvertent cause of the decedent's injuries, the fact that the decedent had apparently chosen Appellant's oncoming vehicle as a means to commit suicide, and the fact that Appellant had to render first aid under these conditions while simultaneously diverting traffic from the scene: "[Appellant's] attempt at mouth-to-mouth [sic] on a woman who was bleeding from that area may be an unusual event for the average citizen, but it does not appear extraordinary for a police officer. Regrettably, a person dying following a failed attempt at resuscitation is something that can be expected to occur in a police officer's line of work." *Payes, supra* at 862. Indeed, the court compartmentalized the incident of November 29, 2006, even further by referenc-

6. For this particular analysis, the Commonwealth Court relied on its decision in *City of Philadelphia v. Workers' Compensation Appeal Board (Brasten I)*, 682 A.2d 875 (Pa.Cmwlth.1996), *aff'd*, 556 Pa. 400, 728 A.2d 938 (1999). In that case, a police officer was indicted and tried on charges (although later acquitted), and subject to intense publicity, arising from a work-related incident where he shot and killed a suspect. The officer later sought compensation for a mental-mental injury. In *Brasten I*, the Commonwealth Court determined that it is not an abnormal working condition for a police officer to be required to shoot and kill a suspect, nor were the subsequent indictment, trial, and publicity abnormal working conditions; thus, it denied benefits. In *Brasten II*, an evenly divided Supreme Court affirmed. However, the opinion in support of affirmance ("OISA") did not rely on the reasoning of the Commonwealth Court. Rather, the OISA determined from the record that the officer's mental injury stemmed not from the shooting, but from the subsequent indictment, trial, and publicity, matters that the OISA concluded were, even if abnormal, "at best, tangentially related to" the officer's employment. *Brasten II, supra* at 940. Because the OISA concluded that the injury had not arisen from working conditions, it determined that no recovery was available under the Act. *Id.* There being no majority on this Court, the order of the Commonwealth Court was affirmed by operation of law.

ing it in the context of Appellant performing "the ordinary task of . . . driving to the station to begin the second leg of his double-back shift." *Id.* at 861–62.

▮▮▮ Our case law emphasizes that psychic injury workers' compensation cases are "highly fact-sensitive." *See, e.g., Wilson, supra* at 343. Although we have articulated this principle in conjunction with the claimant's particular occupation, *id.,* this does not mean that the abnormal-working-conditions analysis ends when it is established that the claimant generically belongs to a profession that involves certain levels or types of stress. Otherwise, the court's analysis would not rest upon the unique factual findings of the case but rather on what a court or tribunal, in its subjective wisdom, determines is the quantity or quality of stress an employee should be able "to take," or what episode of stress is, in the tribunal's subjective determination, comparable to a different episode of stress, which may be expected to be tolerated by an employee. We rejected such an approach in *Logan, supra,* wherein we determined that although police officers may expect to receive threats from criminals during the course of their careers, this "does not mean, as a matter of law, all types and manners of threats may be anticipated in the course of an officer's duties," again, emphasizing the "highly fact-sensitive" nature of the inquiry. *Id.* at 1190. In *Logan,* we held that "objective evidence" supported the conclusion that the police officer established that the **specific** threats against himself and his family constituted abnormal working conditions. Similarly, in *RAG, supra,* we held that the Commonwealth Court erred by not basing its conclusion regarding the existence of abnormal working conditions on the WCJ's actual factual findings, but instead by basing its analysis on isolated testimony in order to arrive at a different determination from the WCJ. *Id.* at 1286–87.

We emphasize that our case law in the area of mental-mental injuries was developed simply to ensure that the Act's requirements that compensable injuries are truly work-related and objectively established are met. *See Martin, supra* at 165; *Panyko, supra* at 732; *Davis, supra* at 177. With this

understanding, we look to the facts of the instant case, as found by the WCJ.

Here, Appellant was found by the WCJ to be temporally totally disabled because he suffers from PTSD.[7] The WCJ further found that Appellant's PTSD was caused by a single documented incident; indeed, even the State Police's expert witness conceded that the triggering incident for Appellant's resultant PTSD was the incident in question. Further, the WCJ found, based on evidence of record that was not challenged on appeal, that this single incident occurred while Appellant was performing his duties as a state trooper. Therefore, had Appellant suffered physical injuries as a result of the incident, there would have been no question that his physical injuries and resulting disability would have been covered under the Act.

Thus, Appellant has established with "objective evidence" that he suffered an injury and resultant disability stemming directly from his working conditions. *See Logan, supra* at 1190; *see also Panyko, supra* at 732 (Appellant's mental injury here was "objectively verifiable and ... traced to an identifiable source," and thus Appellant met two of the specific concerns voiced by this Court regarding proof for mental injuries). However, because the "work-related" injury here is a psychic injury, Appellant was further required to prove that the causative working conditions were "abnormal," a highly fact-sensitive inquiry that required Appellant to establish that he was subject to conditions to which an employee in his position is not normally subject. Because Appellant's injury arose from a single incident, such inquiry rested on whether that incident alone, and not any purportedly comparable sets of incidents, was abnormal. The WCJ found, based on the credible evidence before him, that the type of incident in this case was not one to which state troopers are normally exposed. Thus, unless a reviewing tribunal had set aside this factual finding as arbitrary and capricious, it was bound by it

7. Thus, Appellant suffered from an actual and recognizable mental condition observed in instances where the sufferer has experienced an unusually traumatic event.

when analyzing the legal issue of whether the working conditions were abnormal. *See RAG, supra* at 1284 n. 6. The Commonwealth Court here did not set aside the WCJ's factual findings as arbitrary or capricious, and we again note that these critical factual findings are supported by substantial evidence of record.[8] That is, the record supports the WCJ's finding that what transpired on November 29, 2006, was not an event normally experienced or anticipated by employees in Appellant's line of work. Accordingly, Appellant did not have a "subjective reaction to [the] ordinary vicissitudes" of his job, but a reaction to a highly unusual and singular event. *Davis, supra* at 177. For this reason, as a matter of law, the WCJ's determination, which correctly applied the WCJ's factual findings to the appropriate legal construct, is consistent with this Court's case precedent distinguishing normal from abnormal working conditions, as illustrated by the decisions discussed above. *See RAG, supra* at 1289 (holding that "the WCJ [acted] within his discretion factually, and [correctly applied] the facts to the legal construct," when he determined that actions of a supervisor directed against the injured employee rose to the level of abnormal working conditions).

Accordingly, we hold that the Commonwealth Court erred by not accepting the well-supported facts found by the WCJ

8. The fact that another state trooper had once struck a pedestrian does not make the incident here a "normal" working condition. Abnormal working conditions need not be "unique" working conditions. Along these lines, we respectfully disagree with the assertion of the Dissenting Opinion of Justice Eakin that the WCJ's determination that the incident here was not one normally encountered by state troopers was based "only" (or even primarily) on Appellant's testimony that he never imagined that he would have been involved in such an incident. Dissenting Opinion of Justice Eakin, op. at 592–93, 79 A.3d at 560. We do not believe that the WCJ's decision provides any support for this interpretation. On the contrary, every tribunal below described the event in this case as "unusual." Indeed, by any measure, and irrespective of Appellant's testimony, what happened here was an extraordinary event. For this reason, we hold here that as a matter of law, such a singular extraordinary event is an "abnormal" working condition. Accordingly, we respectfully reject the approach of Justice Eakin's Dissenting Opinion (similar to that taken by the WCAB and Commonwealth Court in this case) that attempts to liken the extraordinary work incident here to different work incidents that would not necessarily be considered abnormal.

establishing the existence of an extraordinarily unusual and distressing single work-related event experienced by Appellant, resulting in his disabling mental condition, where such single and comprehensive work-related event constituted an abnormal working condition as a matter of law. The order of the Commonwealth Court is reversed, and the matter is remanded for reinstatement of the WCJ's decision granting Appellant's claim petition.

Former Justice ORIE MELVIN did not participate in the decision of this case.

Justices SAYLOR, BAER and TODD join the opinion.

Chief Justice CASTILLE files a concurring and dissenting opinion.

Justice EAKIN files a dissenting opinion.

Chief Justice CASTILLE, concurring and dissenting.

I view this as an exceedingly close case. I ultimately agree with the result and mandate reached by the Majority Opinion on the particular facts here. However, I respectfully disagree with the Majority's exposition of the applicable standard of review in cases like this one, which is the more important point; hence, I am in a partially dissenting posture.[1]

The Majority posits that "the existence of a compensable mental or psychic injury is, for the reviewing court, a mixed question of law and fact." Majority Op. at 575, 79 A.3d at 549. But, in my view, the Dissenting Opinion of Mr. Justice Eakin properly sets forth the applicable standard of review as a question of law, Dissenting Op. at 590–93, 79 A.3d at 559–60,

1. *See* Supreme Court IOP § 4(B)(2) ("As a general rule, an opinion is a 'concurring and dissenting opinion' when there is more than one issue and the Justice agrees with the majority's disposition of some but not all issues, and is in disagreement with the mandate. **There may be occasions, however, in which a Justice may agree with the outcome but may disagree with a principle enunciated by a majority of the Court which will govern the outcome of other cases. In such instances, Justices are not strictly bound to concur outright; rather, they retain the discretion to label responses as concurring and dissenting.**") (emphasis added).

and explains why our precedent dictates that course. Although I agree that Justice Eakin's expression of this Court's standard of review is the correct one, and I agree with the majority of Justice Eakin's balanced expression in light of the correct standard, my own application of the standard on the admittedly unique facts here leads to the same result as the Majority.

Rather than a mixed question of law and fact, "we repeatedly have held that the ultimate determination of whether the employee established 'abnormal working conditions' is a question of lawfully reviewable on appeal." *RAG (Cyprus) Emerald Res. v. Workers' Comp. Appeal Bd. (Hopton)*, 590 Pa. 413, 912 A.2d 1278, 1284 n. 6 (2007). Of course, "we have also acknowledged that 'psychic injury cases are highly fact-sensitive and for actual working conditions to be considered abnormal, they must be considered in the context of specific employment.' Such a fact-sensitive inquiry requires deference to the fact-finding functions of the WCJ and, accordingly, we limit our review of those factual findings to determining whether they are supported by the evidence and overturn them only if they are arbitrary and capricious." *Id.* (citations omitted). Accordingly, "we view the appellate review of this question as a two-step process of reviewing the factual findings and then the legal conclusion." *Id.* But, ultimately, the determination of whether those factual findings establish abnormal working conditions is a question of law, fully reviewable on appeal. *Id.* at 1286.

Applying this standard of review to the facts (not the legal conclusions or gloss) as found by the WCJ, which were supported by the record, I conclude that the incident leading to appellant's mental-mental injury of PTSD was a "singular extraordinary event," even for a claimant who is a State Police Trooper. Majority Op. at 582, 79 A.3d at 553. I therefore agree with the ultimate decision to uphold the WCJ's determination that the injury was caused by an abnormal working condition. I do not view the Commonwealth Court's contrary ruling to be a major departure from settled law, and I do not agree with the Majority's overemphatic attempt to paint it as such. I repeat, this is a close case, and reasonable jurists,

such as Justice Eakin, applying the proper standard, may reasonably reach a different result—as the Commonwealth Court did.

Justice EAKIN, dissenting.

The Commonwealth Court affirmed the denial of appellant's claim for workers' compensation benefits based on a psychic injury resulting from abnormal working conditions. The majority finds this erroneous. I respectfully disagree.[1]

The majority finds the Commonwealth Court "reformulated" the WCJ's factual findings, in particular Finding of Fact No. 13, which established "the existence of an extraordinarily unusual and distressing single work-related event experienced by [a]ppellant, resulting in his disabling mental condition[.]" Majority Op. at 587, 79 A.3d at 556–57. The majority also holds the Commonwealth Court erred "by basing its analysis on isolated testimony in order to arrive at a different determination from the WCJ." Id., at 584, 79 A.3d at 555 (citation omitted). However, the majority misapprehends the content of paragraph 13 of the WCJ's decision, which states:

State Troopers are not in the normal course of their duties exposed to the circumstances that occurred in this case[:] to wit[,] a mentally disturbed individual running in front of a Trooper's vehicle while he is operating the vehicle, for no apparent reason. Further, what occurred at the point of impact and immediately thereafter are not working conditions which normally occur for State Troopers[: appellant's] attempted but failed resuscitation of the woman he killed on Interstate 81 while vehicular traffic [was] oncoming, waiting for assistance from other troopers.

WCJ Decision, 10124108, at 3–4.

The majority construes this paragraph as a factual finding and builds its entire opinion on this conclusion. *See* Majority

1. The "standard of review of a WCAB order 'is limited to determining whether a constitutional violation, an error of law or a violation of Board procedure has occurred and, whether the necessary findings of fact are supported by substantial evidence.' " *Borough of Heidelberg v. Workers' Compensation Appeal Board (Selva)*, 593 Pa. 174, 928 A.2d 1006, 1009 (2007) (quoting *Republic Steel Corporation v. Workmen's Compensation Appeal Board (Petrisek)*, 537 Pa. 32, 640 A.2d 1266, 1268 (1994)).

590

Op., at 568–69, 579–82, 79 A.3d at 546–47, 552–54. Paragraph 13 does not merely contain a "factual" finding (*i.e.*, a mentally disturbed individual ran in front of appellant's vehicle while he was operating the vehicle, for no apparent reason, and appellant attempted but failed resuscitation of the individual he struck with his vehicle).[2] It also contains the ultimate determinative legal conclusion that the event was unusual and resulted in an abnormal working condition, which the Commonwealth Court was free to disregard. *Lowe v. Workmen's Compensation Appeal Board (Lowe's Auto Sales, Inc.)*, 152 Pa.Cmwlth. 450, 619 A.2d 411, 414 (1992) (citation omitted) ("The abnormal working conditions test is a deduction from other facts and is purely the result of legal reasoning: therefore, this [c]ourt may judge the correctness of the decision below and draw its own conclusions upon appellate review.").

The majority notes issues concerning "the existence or non-existence of an abnormal working condition in a workers' compensation mental injury case have been described generally as questions of law," however, "[i]t ... may be more accurate to state that the existence of a compensable mental or psychic injury is, for the reviewing court, a mixed question of law and fact." Majority Op. at 575, 79 A.3d at 549 (citation omitted).

The majority is revisiting the applicable standard of review; a matter settled by this Court. In *Wilson v. Workmen's Compensation Appeal Board (Aluminum Company of America)*, 542 Pa. 614, 669 A.2d 338 (1996), this Court held:

The question of whether specific working conditions amount to abnormal working conditions has been variously described as "a mixed question of law and fact," *Parson v. Workmen's Compensation Appeal Board*, [164 Pa.Cmwlth. 165] 642 A.2d 579 ( [Pa.Cmwlth.]1994), or as one of law, *Archer v. Workmen's Compensation Appeal Board*, [138 Pa.Cmwlth. 309] 587 A.2d 901 ( [Pa.Cmwlth.]1991).

We recognize that psychic injury cases are highly fact-sensitive and for actual work conditions to be considered abnormal, they must be considered in the context of the

2. The mere fact paragraph 13 is within the WCJ's "findings of fact" is not dispositive.

specific employment. *Volterano [v. Workmen's Compensation Appeal Board,* 536 Pa. 335, 639 A.2d 453, 458 (1994) ]. Where, as here, the Board has taken no additional testimony, appellate review of the referee's findings of fact regarding the claimant's employment is limited to a determination of whether the findings are supported by the evidence as a whole and will be overturned only if arbitrary and capricious. *Bethenergy Mines v. Workmen's Compensation Appeal Board,* [531 Pa. 287] 612 A.2d 434 (1992). Whether the facts as found by the referee support a conclusion that the claimant has been exposed to abnormal working conditions is a question of law, however, that is reviewable on appeal. *Id.,* at 343. Similarly, in *Davis v. Workmen's Compensation Appeal Board (Swarthmore Borough),* 561 Pa. 462, 751 A.2d 168 (2000), we held:

Appellate review of the workers' compensation judge's findings of fact is limited to a determination of whether the findings are supported by the evidence as a whole. Where no additional testimony is taken before the Board, the findings will be overturned only if arbitrary or capricious. Whether the findings of fact support a conclusion that the claimant has been exposed to abnormal working conditions is a question of law, however, that is fully reviewable on appeal.

*Id.,* at 174 (citation omitted). More recently, in *RAG (Cyprus) Emerald Resources, L.P. v. Workers' Compensation Appeal Board (Hopton),* 590 Pa. 413, 912 A.2d 1278 (2007), we held:

The Commonwealth Court referred to the determination of whether working conditions are abnormal as a mixed question of fact and law. While we repeatedly have held that the ultimate determination of whether the employee established "abnormal working conditions" is a question of law fully reviewable on appeal, we have also acknowledged that psychic injury cases are highly fact-sensitive and for actual working conditions to be considered abnormal, they must be considered in the context of specific employment. Such a fact-sensitive inquiry requires deference to the fact-finding functions of the WCJ and, accordingly, we limit our

review of those factual findings to determining whether they are supported by the evidence and overturn them only if they are arbitrary and capricious.

*Id.,* at 1284 n. 6 (internal citations and quotations marks omitted). We also added:

Conversely, the determination of whether those factual findings establish abnormal working conditions under *Martin* [*v. Ketchum, Inc.,* 523 Pa. 509, 568 A.2d 159 (1990)] is a question of law, fully reviewable on appeal. [*Davis,* at 174.] Consequently, our review of the present case requires, pursuant to this standard, a two-prong examination. First, we must decide whether the Commonwealth Court abused its discretion by substituting its factual findings for those made by the WCJ and supported by the record, and second, whether the findings of fact support the legal conclusion that [c]laimant's injury was the result of an abnormal working condition.

*Id.,* at 1286. Therefore, while the analysis can be articulated as a two-step process, a review of the factual findings and then the legal conclusions, "the determination of whether those factual findings establish abnormal working conditions ... is a question of law, fully reviewable on appeal." *Id.* (citation omitted).

The instant WCJ's factual findings are not disputed, much less reformulated by the Commonwealth Court. The Commonwealth Court, instead, found the WCJ's factual findings were legally insufficient to establish abnormal working conditions. Such assessment, which was within the scope of the Commonwealth Court's review, is a question of law, not of fact or, as the majority holds, a mixed question.

The majority discounts other "factual" portions of the WCJ's decision, which specifically acknowledges troopers "are exposed to vehicle accidents, mayhem, bodily injuries, death, murder, and violent acts in the normal course of their duties." WCJ Decision, 10|24|08, at 3. Additionally, the majority gives much weight to the WCJ's abnormal working condition determination, which is based only on appellant's testimony that he

"never once imagined that something like this could happen." *Payes v. Workers' Compensation Appeal Board (Commonwealth of PA/State Police)*, 5 A.3d 855, 857 (Pa.Cmwlth.2010) (citation omitted). Such testimony alone is insufficient to establish an abnormal working condition. *See Martin*, at 164–65 (citing *Russella v. Workmen's Compensation Appeal Board (National Foam Systems, Inc.)*, 91 Pa.Cmwlth. 471, 497 A.2d 290, 292 (1985) (claimant cannot rely solely upon his own account of working environment to sustain his burden of proving injury caused by abnormal working condition)). The expert testimony the WCJ relied upon merely stated appellant's injury (PTSD) was related to the event. However, "even if a claimant adequately identifies actual (not merely perceived or imagined) employment events which have precipitated psychiatric injury, the claimant must still prove the events to be abnormal before he can recover." *Wilson*, at 344 (citations omitted). As the Commonwealth Court held, appellant's testimony was insufficient to do so. *See Martin*, at 164 (citation omitted).

The injury at issue, in fact, did not result from abnormal working conditions. As noted, the determination of whether there are abnormal working conditions is a reviewable question of law which must be addressed objectively, considering the specific line of employment, not the employee's subjective reaction to the event or condition. *See Davis*, at 176–77; *Hershey Chocolate Co. v. Commonwealth*, 546 Pa. 27, 682 A.2d 1257, 1260 (1996) (citation omitted); *Wilson*, at 343–44; *Volterano*, at 458.

Appellant is a Pennsylvania State Trooper. Law enforcement officers potentially face life-and-death situations every day. Confrontations, injuries, blood, death, and other frightening events are unfortunate, but necessarily a daily part of their work. While the specifics of every event they may face obviously cannot be anticipated, the fact there will be such events is certainly foreseeable. One cannot undertake this most honorable profession without that understanding, and it is that understanding that causes us to hold them in such high regard.

As the Commonwealth Court noted, appellant, as a police officer, "can be expected to be witness to horrible tragedy. This includes, as acknowledged by [appellant], responding to motor vehicle accidents in an emergency capacity. Undoubtedly, in doing so, he may be subjected to traumatic visuals such as injured children, maimed adults, and, unfortunately, death." *Payes*, at 861. Situations like the instant one, although traumatic, are simply not extraordinary or abnormal for police officers. *See City of Philadelphia v. Civil Service Commission of The City of Philadelphia*, 565 Pa. 265, 772 A.2d 962, 969 (2001); *Davis*, at 177; *City of Philadelphia v. Workers' Compensation Appeal Board (Brasten)*, 556 Pa. 400, 728 A.2d 938, 942 (1999) (equally divided court).

The fact appellant never thought an event "like this" could happen, *see Payes*, at 857, or that "he never thought he would be involved in someone's death," *id.*, at 859, does not make the event an abnormal working condition. *See Wilson*, at 344 (citing *Martin*, at 164) (" '[A]bnormal working conditions,' describes the requirement that the claimant prove that the psychic injury is in fact a work-related injury. The requirement is an objective one, rather than subjective. Thus, a claimant may not recover benefits for psychic injuries that arise from subjective reactions to normal working conditions."). Absent sufficient objective evidence the event constituted an abnormal working condition, appellant's experience of the event constitutes no more than a subjective reaction. *See id.*

Finally, the majority notes "the abnormal-working-conditions analysis [does not end] when it [ ] establishe[s] that the claimant generically belongs to a profession that involves certain levels or types of stress." Majority Op., at 584, 79 A.3d at 555. While I agree job title alone is not dispositive of the issue, we should not fail to appreciate the determination that an injury results from abnormal working conditions crucially depends on the job performed, for "what may be normal for a police officer will not be normal for an office worker." *RAG*, at 1288 (citation omitted).

It would be gratifying to award benefits here, for the triggering event was unquestionably traumatic, but trauma is not the test for psychic injury. In my opinion, considering the limited evidence and relevant case law, the Commonwealth Court committed no error when it concluded the injury did not result from abnormal working conditions. Therefore, I respectfully dissent.