IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lauren Griffin, : 
               Petitioner : 
  : 
  :   No. 1956 C.D. 2016
         v. : 
  : 
  :   Argued: September 11, 2017
Workers' Compensation  Appeal : 
Board (Luzerne County Children : 
and Youth), : 
             Respondent : 


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE JOSEPH M. COSGROVE, Judge[1]


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH             FILED:  January 4, 2018

      Lauren Griffin (Claimant) petitions for review of the November 8, 2016, order of the Workers' Compensation Appeal Board (Board) affirming the decision of the Workers' Compensation Judge (WCJ) denying the claim petition she filed against Luzerne County Children and Youth (Employer).[2]

---

[1] This case was decided before Judge Cosgrove's service on the Court ended on December 31, 2017.

[2] Claimant also filed a penalty petition against Employer, which was consolidated with the claim petition in proceedings before the WCJ.  The WCJ granted Claimant's penalty petition and Employer has not appealed.

**Facts and Procedural History**

Claimant was employed by the Luzerne County Offices of Children and Youth Services as a case worker. Her duties in that position were to receive referrals, go to individual locations to investigate allegations of abuse or neglect and ensure the safety of children, and to assist families with needs that they may have. Claimant had been in this position for approximately two-and-a-half years. On February 13, 2014, Claimant was supervising a two-month old child who had been referred to the agency around November 2013. The child had been taken into the custody of Employer in early December of 2013, before custody was awarded to the father of child. Claimant visited the home on February 13, 2014, held the baby, and determined the baby was doing well. (WCJ's Finding of Fact No. 7.)

On February 14, 2014, Claimant was called into work despite not being scheduled. Upon reporting to work, she was informed that the child had been killed the previous evening when the mother closed the baby into a recliner and left the child there for the night. Claimant felt upset and guilty, and advised Employer's social service coordinator and manager of the intake offices of the General Protective Services, JoAnn Van Saun (Van Saun), that she was feeling overwhelmed. Claimant also informed her coordinator that she was "fine," but testified this was because she wanted to be fine, but was very upset by the circumstances. (WCJ's Findings of Fact Nos. 7-8.) Claimant testified that it was not uncommon for cases to involve babies that were dead or near death, but that it was not typical to be working with a baby that dies while he or she was part of the caseload. (Reproduced Record (R.R.) at 26a.) Further, shortly after the incident, Claimant was identified by name in newspaper articles and television reports about the incident. *Id.*

2

Approximately two weeks after the incident, Claimant spoke with a therapist, Mary Martin (Martin), upon referral from her family doctor. Claimant testified that she had experienced nightmares and trouble sleeping as a result of the incident, as well as fits of crying and continued feelings of guilt. She also testified to experiencing continuous visions of the baby the day before the incident when the child was healthy. Claimant indicated that she knew the incident was not her fault, but still experienced guilt. Claimant continued to work throughout this period, because she loved her job and loved being able to help children. (WCJ's Finding of Fact No. 7.) Claimant testified that she would miss one day of work a week to attend therapy appointments, and may have missed an additional day on occasion for additional appointments or because she "couldn't find [herself] to get out of bed." (R.R. at 19a-20a.) Claimant also testified that she had been put on medication following the incident in addition to the counseling she received from Martin. This medication was prescribed by Elizabeth Gernhardt, M.D., Claimant's family physician, and Mark Saxon, M.D., a psychiatrist to whom Claimant was referred by Martin. (R.R. at 31a-32a, 160a.) After initially denying having previously been prescribed medication for anxiety, Claimant later admitted she forgot she had been prescribed anxiety medication by Dr. Gernhardt in 2013. (R.R. at 142a.)

Approximately six months after the incident, in August of 2014, Claimant met with the regional office to discuss the incident. Claimant described this meeting as "more of an interrogation." (R.R. at 21a.) Further, Claimant's coordinator, Van Saun, testified that she was not allowed to accompany Claimant during this meeting. Van Saun also testified that Claimant was distraught after the meeting. (R.R. at 79a.) Claimant testified that this meeting brought back the symptoms, including nightmares, trouble sleeping, crying, and loss of concentration. (R.R. at 22a.)

3

On September 4, 2014, Claimant testified that Van Saun yelled at her after Claimant made a mistake on another case. Specifically, she stated that Van Saun told Claimant "if you would have learned anything from a dead baby, it would be to do [her] job." (R.R. at 23a.) That evening, Claimant worked late, stating she was crying and trying to get work done to avoid more trouble. Claimant testified that she could not sleep that night, and went and saw her therapist the next day. (R.R. at 23a-24a.) Effective September 5, 2014, Claimant went on leave pursuant to the Family and Medical Leave Act (FMLA)[3] at the direction of Martin. (R.R. at 43a-48a, 172a, 178a-79a.) This leave lasted from September 5 until mid-October 2014. (WCJ's Finding of Fact No. 7.)

In the meantime, on September 18, 2014, Claimant filed a claim petition, alleging disability as of September 5, 2014, as the result of the February 14, 2014, discovery of the death of the child. (R.R. at 1a-4a.) On October 3, 2014, Employer filed a responsive answer, denying all material allegations. (Supplemental Reproduced Record (S.R.R.) at 1b-2b.)

The WCJ held hearings on November 6, 2014, February 5, 2015, and April 9, 2015. (WCJ's Finding of Fact No. 5.) Claimant testified consistent with the above chronology. Further, Claimant testified on cross-examination that in the course of her two-and-a-half years of employment, she had seen many neglected and abused children, noting that it was not uncommon for her or other case workers to see children in disturbing and sometimes life-threatening situations. Claimant also testified that she was not terminated or suspended, nor did she receive a written reprimand as a result of the incident. (WCJ's Finding of Fact No. 7.)

---

[3] 29 U.S.C. §§2601-2654.

4

Employer presented testimony from Van Saun in its defense. Van Saun is the social service coordinator for Employer and worked for Employer for 29 years. She manages the intake offices of the General Protective Services. Van Saun testified that Claimant was under the direct supervision of Becky Glassman (Glassman); Van Saun supervised Glassman, so she was also responsible for supervising Claimant. Van Saun indicated that following an incident such as the one that occurred in this case, reviews are conducted both internally and externally, including by law enforcement, and that this is a difficult process. (WCJ's Finding of Fact No. 8.)

Van Saun testified that she advised Claimant to reach out to the Employee Assistance Program. Further, she contradicted Claimant's testimony in regards to her treatment of Claimant, testifying that Claimant had told her that only Glassman and she were supporting Claimant. She testified she was disappointed and stunned that Claimant was alleging part of her anxiety and depression was a result of mistreatment by Claimant's supervisors. (WCJ's Finding of Fact No. 8.)

Van Saun confirmed that prior to the incident, Claimant was an excellent worker, and her performance declined after the incident, which was not unexpected based on Van Saun's experience. Van Saun testified that Claimant declined emotionally as well as professionally, and her caseload was shifted to ensure Claimant did not have cases involving babies. Van Saun acknowledged that she knew of no other instances where a child died after being held by a case worker the day before. (WCJ's Finding of Fact No. 8.) Van Saun also acknowledged that while it was common for Employer to be named in newspaper articles regarding these types of incidents, Claimant was the first of her employees to be mentioned by name in these reports. (R.R. at 86a.)

5

Employer presented the testimony of Krista McIlhaney (McIlhaney). McIlhaney is the Director of Children and Youth at Employer, and assumed that position on September 22, 2014, after the incident had occurred. McIlhaney identified a list of fatalities or near-fatalities that have occurred in connection with cases overseen by Employer. In addition to the infant who died in the present case, there were six near-fatalities and six fatalities in 2013 and 2014. Additionally, McIlhaney identified a fatality that occurred approximately three weeks prior to her testimony in February, 2015. (WCJ's Finding of Fact No. 9; R.R. at 91a-94a, 102a-03a). She knew none of the circumstances of any of the fatalities or near-fatalities because she had not commenced work with Employer until after these incidents occurred. (R.R. at 103a.)

Further, McIlhaney testified with regard to a hearing that occurred as part of the child's case prior to the February 13, 2014, death. McIlhaney stated that Claimant participated in a January 3, 2014, hearing which outlined what services the parents of the child were to engage in. These services are outlined in a Family Service Plan, which should have been completed within sixty days of the date that services are referred. However, in this case, the Family Service Plan was not completed until February 18, 2014, four days after the child was killed, and outside of the sixty-day deadline of the December 6, 2013, referral. (R.R. at 95a-98a.) McIlhaney was unable to clear up the date discrepancies and was referred to Claimant's lawyer on the matter. (R.R. at 99a-100a.)

In support of her petition, Claimant presented the deposition of her therapist, Martin, who is a licensed clinical social worker. Martin initially diagnosed Claimant with depression, but after review diagnosed Claimant with post-traumatic stress disorder (PTSD) as a result of the February 14, 2014, incident. (WCJ's Finding of Fact No. 12.) Martin testified that she first saw Claimant on February 26, 2014, on

6

referral from Dr. Gernhardt, and that prior to the incident, Claimant had been dealing with the deaths of her grandmother, best friend, and dog. (R.R. at 180a-82a.) Martin testified that based on the *Diagnostic & Statistical Manual of the Mental Disorders*, Fifth Edition (DSM-V), from the American Psychiatric Association, Claimant had PTSD. (R.R. at 181a.)

Martin was also questioned on cross-examination regarding an office note dated September 5, 2015, indicating Claimant admitted that she lied during a hearing. (R.R. at 183a-84a.) This hearing was the January 3, 2014, hearing identified by McIlhaney in her testimony. Martin testified that Claimant told her that she was told by a superior to date something inaccurately, and felt fearful if she did not comply, that it would affect her job. Martin stated that this incident could be connected to the PTSD diagnosis, because in some diagnostic assessments, a lack of trust with authority figures is a factor. (R.R. at 184a-86a.)

In defense of the petition, Employer presented the deposition of Wolfram Rieger, M.D., who is Board-certified in Psychiatry. Dr. Rieger concluded that Claimant likely had adjustment disorder with depression and anxiety as a result of the February 14, 2014, incident, and did not believe Claimant had PTSD. Because Martin's background was in social work, and not psychiatry, the WCJ credited Dr. Rieger's testimony over that of Martin. (WCJ's Findings of Fact Nos. 12-15.)

The WCJ concluded that while Claimant had an adjustment disorder with depression and anxiety as a result of the February 14, 2014, incident, the incident was not the result of an abnormal working condition. The WCJ credited the testimony of Claimant, with respect to the representations about her work. The WCJ credited the exhibits presented with respect to the number of deaths that had occurred during 2013 and 2014. The WCJ credited the testimony of Van Saun in that she directed Claimant

7

to the Employee Assistance Program, and that Van Saun supported Claimant through multiple reviews. The WCJ reached his conclusion because the death of a child, while tragic, is not so foreign to the offices of Employer to render it an abnormal working condition. (WCJ's Finding of Fact No. 15.) As such, the WCJ denied Claimant's petition in an order circulated on November 16, 2015.

Claimant appealed to the Board, arguing that the WCJ erred in failing to establish abnormal working conditions. Additionally, Claimant argued that the WCJ erred in concluding that Claimant did not suffer PTSD as a result of the incident. The Board found that substantial evidence existed in the record to support the WCJ's credibility finding in accepting Dr. Rieger's testimony as credible over the testimony of Martin and concluding that Claimant suffered an adjustment disorder and not PTSD. The Board relied on *Lehigh County Vo-Tech School v. Workmen's Compensation Appeal Board (Wolf)*, 662 A.2d 797 (Pa. 1995), in concluding that the WCJ's findings were supported by substantial, competent evidence. (Board op. at 2.)

Regarding the WCJ's rejection of an abnormal working condition, the Board distinguished the present facts from *Payes v. Workers' Compensation Appeal Board (Pennsylvania State Police)*, 79 A.3d 543 (Pa. 2013). In *Payes*, the Supreme Court held that there is no bright line test for what constitutes an abnormal working condition. Further, the Court held that an abnormal working condition can be a "reaction to a highly unusual and singular event," and that "abnormal working conditions need not be unique working conditions." *Id.* at 556. The Board distinguished the facts of *Payes*, finding that the facts of the current case were not sufficiently extraordinary or unusual within the context of Claimant's employment to rise to the level of an abnormal working condition. Further, the Board stated that coupling the WCJ's determination with the holding in *Payes* meant that the more fact

8

intensive the inquiry, the more deference should be shown to the WCJ's findings. (Board op. at 9-11.) Accordingly, the Board affirmed the WCJ.

Claimant filed for review with this Court,[4] advancing two arguments on appeal. First, Claimant argues that she established an abnormal working condition, and that as a result of this abnormal working condition, she sustained disabling PTSD. Claimant also argues that the WCJ and Board erred by ignoring the compounding factors separate and apart from the death of the child that raise the circumstances to an abnormal working condition. Additionally, Claimant requested that should an abnormal working condition be found, that the case be remanded to the WCJ for reconsideration of the evidence in support of the PTSD diagnosis. (Claimant's brief at 5, 12-13.)

**Discussion**

Historically, the existence of an abnormal working condition was a question of law. *Panyko v. Workers' Compensation Appeal Board (U.S. Airways)*, 888 A.2d 724, 729 (Pa. 2005). However, the Supreme Court in *Payes* refined review of cases involving mental or psychic injuries: "whether working conditions are normal is a mixed question of law and fact." 79 A.3d at 549. Thus, "[t]he more fact intensive the inquiry, the more deference a reviewing court should give to the [WCJ's] findings below." *Id. See also*, *Pennsylvania Liquor Control Board (PLCB) v. Workers' Compensation Appeal Board (Kochanowicz),* 108 A.3d 922, 929 (Pa. Cmwlth. 2014).

---

[4] Our scope of review is limited to determining whether findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704; *Meadow Lakes Apartments v. Workers' Compensation Appeal Board (Spencer)*, 894 A.2d 214, 216 n.3 (Pa. Cmwlth. 2006).

9

Accordingly, this Court's review of questions involving allegations of an abnormal working condition requires reviewing factual findings as well as the legal conclusion.

In a workers' compensation proceeding, the WCJ is the ultimate fact finder and is the sole authority for determining the weight and credibility of evidence. *Lombardo v. Workers' Compensation Appeal Board (Topps Company, Inc.),* 698 A.2d 1378, 1381 (Pa. Cmwlth. 1997), *appeal denied*, 718 A.2d 787 (Pa. 1998). "As such, the WCJ is free to accept or reject the testimony of any witness, including medical witnesses, in whole or in part." *Id.* The WCJ's findings will not be disturbed on appeal when they are supported by substantial, competent evidence. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995). "Substantial evidence is such relevant evidence which a reasonable mind might accept as adequate to support a finding." *Berardelli v. Workmen's Compensation Appeal Board (Bureau of Personnel, State Workmen's Insurance Fund),* 578 A.2d 1016, 1018 (Pa. Cmwlth.), *appeal denied*, 592 A.2d 46 (Pa. 1990). Moreover, where both parties present evidence, it is irrelevant that the record contains evidence which supports a finding contrary to that made by the WCJ; rather, the pertinent inquiry is whether evidence exists that supports WCJ's findings. *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.),* 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998).

In *Payes*, the claimant was a trooper with the Pennsylvania State Police and had been employed in that capacity for approximately 12 years. On November 29, 2006, as the claimant was driving his patrol car on Interstate 81 in the early morning hours around 5:45 a.m., a woman dressed completely in black ran in front of his car. The claimant was unable to avoid the woman. The claimant's patrol car struck the woman, causing her to flip over the vehicle and land on the highway. The claimant

10

immediately stopped his car and rushed to provide aid to the woman, including mouth-to-mouth resuscitation as she bled from her mouth. At the same time, the claimant had to divert oncoming traffic so that neither he nor the woman would be struck by another vehicle. The woman ultimately was pronounced dead at the scene and it was later discovered that she suffered from mental illness and had been seen by other drivers walking up and down the area adjacent to the highway immediately prior to the incident.

The claimant remained off work until January 2, 2007, at which time he returned to desk duty. However, the claimant immediately began experiencing anxiousness and stress that led him to believe he could no longer work as a state trooper. Following two notices of workers' compensation denials, the claimant filed a claim petition alleging PTSD. The claim petition was granted by a WCJ, who found that although state troopers may expect to encounter violent situations, the particular work-related mental stimulus experienced by the claimant was not one normally encountered or expected. On appeal, the Board reversed, concluding that the incident did not constitute an abnormal working condition given the nature of the claimant's stressful and perilous position. This Court affirmed the Board, but our Supreme Court reversed, concluding that the WCJ's finding of an abnormal working condition was supported by the evidence.

In discussing mental, or psychic injuries, the Supreme Court explained as follows:

> Our case law emphasizes that psychic injury workers' compensation cases are 'highly fact-sensitive.' Although we have articulated this principle in conjunction with the claimant's particular occupation, . . . this does not mean that the abnormal-working-conditions analysis ends when it is established that the claimant generically belongs to a profession that involves certain levels or types of stress.

11

> Otherwise, the court's analysis would not rest upon the unique factual findings of the case but rather on what a court or tribunal, in its subjective wisdom, determines is the quantity or quality of stress an employee should be able 'to take,' or what episode of stress is, in the tribunal's subjective determination, comparable to a different episode of stress, which may be expected to be tolerated by an employee. We rejected such an approach in *Logan, supra*,[5] wherein we determined that although police officers may expect to receive threats from criminals during the course of their careers, this 'does not mean, as a matter of law, all types and manners of threats may be anticipated in the course of an officer's duties,' again, emphasizing the 'highly fact-sensitive' nature of the inquiry.

*Id.* at 555 (citations omitted).

After *Payes*, this Court addressed a mental stress claim arising out of a single incident in *Kochanowicz*. There, a thirty-year employee of the state liquor store system was working as general manager of one of the retail liquor stores on April 28, 2008, when a masked gunman entered the store just before closing, demanding money and holding a pistol to claimant's head the entire time, until the robber tied the claimant and his co-worker to a chair, fleeing the scene. Although the claimant had been part of training in the event of a robbery, he had never been robbed before. The claimant alleged PTSD and anxiety in his claim petition. The WCJ granted benefits, finding, *inter alia*, that "workplace violence, *which includes robberies and theft* . . . is an abnormal working condition." *Kochanowicz*, 108 A.3d at 926 (emphasis in original). The Board affirmed but was reversed by this Court. The Supreme Court then vacated and remanded based on *Payes*.

Upon remand, this Court applied the mandate in *Payes*, recognizing that "whether working conditions are normal is a mixed question of law and fact." 108

---

[5] *City of Pittsburgh v. Logan*, 810 A.2d 1185 (Pa. 2002) (holding that a police officer's working conditions were objectively abnormal where a street gang, in retaliation for the officer killing a gang member in a shootout, placed a bounty on the life or health of the officer and his family).

12

A.3d at 929. This Court noted that the prior inquiry frequently ended upon evidence accepted that the claimant worked at a job generically involving "certain levels or types of stress." *Id.* at 933 (citing *Payes*). Such a limited inquiry, we concluded, fails to do justice to the unique facts and evidence of each case. Because the situation in *Kochanowicz* was so fact-intensive, this Court affirmed the Board, based on deference to the WCJ as fact-finder, and allowed benefits to the claimant. *Id.* at 933-34.

In the present case, there can be no dispute that the death of a child under one's care or supervision is a horrific act. Nor is it disputed that case workers like Claimant regularly encounter disturbing and sometimes life-threatening situations. Indeed, Claimant admitted during her testimony before the WCJ that she often was assigned cases involving neglected and abused children. (WCJ's Finding of Fact No. 7.) Additionally, the WCJ credited testimony from McIlhaney, Employer's Director, who identified a list of child fatalities or near-fatalities that have occurred in connection with cases overseen by Employer and specifically noted that there were six fatalities and six near-fatalities in 2013 and 2014. Further, the WCJ credited the testimony of Employer's social service coordinator and manager of the intake offices of the General Protective Services, Van Saun, regarding the multiple review process that follows a situation such as that which occurred in this case. While acknowledging that each situation "has its own unique characteristics," the WCJ stated that the presence of such a process evidences that the situation was not so unique to Employer to render it completely abnormal to Claimant's position. (WCJ's Finding of Fact No. 15.)

Moreover, the facts of *Payes* and *Kochanowicz* are distinguishable from the present case. In *Payes*, our Supreme Court distinguished between what might be considered a normal working situation for a police officer in having to take the life of a suspect during a physical struggle, as opposed to the abnormal situation that occurred

in that case where a pedestrian intentionally ran in front of a police officer's car as a means to commit suicide. In *Kochanowicz*, the claimant had a gun pointed at his head and was tied up in the course of a robbery at the liquor store where he worked. However, unlike *Payes* and *Kochanowicz*, Claimant in this case did not directly experience a traumatic event at work. The incident occurred overnight in the parents' home. Claimant was not present and did not witness the death of the baby that was under her supervision. This distinction is important herein, especially because the WCJ found that the incident in question "was not so foreign to the offices of Children and Youth Services to render it an abnormal working condition," WCJ's Finding of Fact No. 15, and Claimant testified that it was her imagination of "what the situation may have looked like" that depressed her,[6] R.R. at 18a.

### Conclusion

Because Claimant failed to establish that the incident in question constituted an abnormal working condition, the Board did not err in affirming the WCJ's decision denying Claimant's claim petition.[7]

Accordingly, the Board's order is affirmed.

---

[6] Further, Claimant admitted in her testimony before the WCJ that she had been experiencing similar symptoms of anxiety and depression in July 2013, relating to the death of a family member, a friend, and her dog. (R.R. at 132a-35a.) Martin, Claimant's therapist, confirmed the same in her testimony and indicated that Claimant had been treating with another doctor for these conditions. (R.R. at 177a.)

[7] In the event that this Court would conclude that Claimant established abnormal working conditions, she requested that the matter be remanded to the WCJ for reconsideration of her evidence relating to a claim of PTSD in her claim petition. Given our disposition above, a remand is not warranted on this issue. Further, we note that the WCJ specifically credited the testimony of Dr. Rieger that Claimant did not suffer from PTSD.

14

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lauren Griffin, : 
          Petitioner : 
           :   No. 1956 C.D. 2016
          v. : 
           : 
Workers' Compensation  Appeal : 
Board (Luzerne County Children : 
and Youth), : 
          Respondent : 

## ***ORDER***

AND NOW, this 4th day of January, 2018, the order of the Workers' Compensation Appeal Board, dated November 8, 2016, is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

Lauren Griffin,                              :
             Petitioner              :
                         :
       v.                             :
                         :
Workers' Compensation Appeal Board   :
(Luzerne County Children and Youth),   :   No. 1956 C.D. 2016
              Respondent            :   Argued: September 11, 2017

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE JOSEPH M. COSGROVE, Judge

OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE COSGROVE             FILED: January 4, 2018

A child died under horrible circumstances shortly after Lauren Griffin (Claimant) had visited with and held the child. As I cannot agree with the Majority, and given that I believe the circumstances surrounding this tragedy constitute abnormal working conditions, I must dissent. In *Payes v. Workers' Compensation Appeal Board (Pennsylvania State Police)*, 79 A.3d 543 (Pa. 2013), the Supreme Court was clear that determination of whether abnormal working conditions exist must be based on a broader analysis than was undertaken here. As the Workers' Compensation Appeal Board's (Board) application of *Payes* is erroneous, its decision cannot stand.

I am likewise troubled by what appears to be an errant dismissal by Luzerne County Children and Youth's (Employer) medical expert of the suggestion

that Claimant suffers from post-traumatic stress disorder (PTSD) as a result of her involvement with this child. The psychological stew people face in their lives can be extraordinarily stressful, and Claimant certainly experienced these stresses (including those stemming from her relationship with her supervisor). Coupled with the trauma of her experience with the child, it is difficult to discern how the Workers' Compensation Judge (WCJ) and the Board could miss this. With the evidence so largely in her favor, the WCJ's and Board's decisions are baffling and cannot be upheld. This is a tragic case and denying Claimant compensation only exacerbates it. I would outright reverse, or at the very least, remand for further review of the PTSD claim. I dissent.

_____
JOSEPH M. COSGROVE, Judge