Craig McLAURIN, Petitioner

v.

### WORKERS' COMPENSATION APPEAL BOARD (SEPTA), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 27, 2009.

Decided June 5, 2009.

Publication Ordered Aug. 26, 2009.

*Workmen's Compensation Appeal Board (Myers)*, 670 A.2d 1194 (Pa.Cmwlth.), *appeal denied*, 544 Pa. 679, 678 A.2d 368 (1996).

---

Jerry M. LeHocky, Philadelphia, for petitioner.

Doreen Prescott Grant, Philadelphia, for respondent.

BEFORE: SMITH–RIBNER, Judge, COHN JUBELIRER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

Craig McLaurin seeks review of the Workers' Compensation Appeal Board's order that affirmed denial of McLaurin's claim petition. He argues that the Workers' Compensation Judge's (WCJ) findings are not supported by substantial evidence and that the WCJ committed an error of law by concluding that his psychological injury was not caused by an abnormal work condition.

On October 9, 2006, McLaurin had been employed by Southeastern Pennsylvania Transportation Authority (SEPTA) for six months as a bus driver with a set route in West Philadelphia. On that date, several hooded young men entered his bus without paying their fares. At the end of the route, one of the men approached McLaurin and pulled a gun out of his pocket. Believing that he was to be shot, McLaurin

pleaded with the gunman, who eventually put away his weapon and disembarked. McLaurin immediately drove to the bus depot and advised his supervisor. He was unable to work the following day and has not returned.

McLaurin filed a claim petition alleging that he suffered work-related post-traumatic stress disorder, anxiety, chest pains/angina and impotence as a result of the October 2006 incident. He submitted the testimony of his treating physician, Paris D. Hughes, D.O., who examined McLaurin two days after the incident, noting that he appeared very anxious and complained of insomnia, racing heart and anxiety-induced chest pain. The doctor observed symptoms including a reluctance to discuss the incident and a sense of shame. He diagnosed McLaurin with post-traumatic stress disorder, anxiety depressive disorder and insomnia related to the incident.

Psychologist Jacques Lipetz, Ph.D. testified that on December 11, 2006, McLaurin described the incident and claimed that it continued to give him nightmares and flashbacks. McLaurin would get extremely upset by people in hoodies and he avoided riding buses. Dr. Lipetz also diagnosed McLaurin with post-traumatic stress disorder. As of April 23, 2007, McLaurin was no longer fearful of people in hoodies and was able to ride a bus but still needed treatment. Dr. Lipetz determined that McLaurin was not capable of returning to his bus driver job but that he could perform other work if he was cleared physically. McLaurin also submitted the report of his May 1, 2007 independent medical examination by Robert M. Toborowsky, M.D, a board-certified psychiatrist. Dr. Toborowsky acknowledged that McLaurin likely developed post-traumatic stress disorder as a result of the incident, but he opined that McLaurin had since recovered.

SEPTA presented the testimony of Randolph Hopson (Hopson), who oversees the training of new employees and who worked as a SEPTA bus driver for ten years. Hopson explained that new bus drivers are advised to expect dangerous passengers and are given training on how to deal with potential difficult situations. The drivers are given codes to be used when radioing for help and the busses are equipped with a silent alarm that notifies the control center of a problem if the driver cannot talk. SEPTA offered as exhibits the training DVD and Rules and Regulations Manual that instruct drivers on how to handle certain situations including dangerous passengers.

SEPTA's workers' compensation coordinator Michael Selvato testified about the records of assaults on operators in an effort to show that the incident was not abnormal. He explained that between June 1 and November 1, 2005 there were 292 passenger disturbances on SEPTA busses and 11 assaults on operators; between November 1, 2005 and June 1, 2006 there were 738 disturbances and 33 assaults; and between June 1, 2006 and June 25, 2007 there were 62 assaults on bus drivers. Selvato noted that there had been two bus drivers threatened with a gun from the beginning of 2007 until the time of the hearing on August 23, 2007. During his time as a trolley driver for SEPTA, Selvato had not been accosted with a gun, but he had been assaulted and threatened with a knife.

Dr. Toborowsky testified that he had experience treating post-traumatic stress disorder in the Vietnam War and that he had consulted with fire and police departments. The doctor found no signs of mental disorder, anxiety or depression when he examined McLaurin on May 1, 2007, who reported no recent nightmares about the incident and had no symptoms of post-

traumatic stress such as flashbacks or hyper-arousal. Dr. Toborowsky concluded that McLaurin initially developed post-traumatic stress disorder due to the incident but that by the time of the IME he no longer suffered from that disorder or any other psychological disorder. He felt that McLaurin could return to work without restriction but recommended that treatment be gradually tapered off rather than abruptly ended.

■■■ The Incident Reports submitted by SEPTA were summarized by the WCJ in Findings of Fact (F.F.) No. 17(a)-(d). The WCJ credited McLaurin's testimony about the incident and found his reaction to be understandable. She found that McLaurin did suffer post-traumatic stress disorder related to the work incident and that his continuing symptoms prevented his return to work. However, the WCJ also found SEPTA's witnesses to be credible and persuasive on the issue of whether the experience of being accosted with a gun was an abnormal work condition. Citing *McCarron v. Workers' Compensation Appeal Board (Delaware County District Attorney's Office)*, 761 A.2d 668 (Pa. Cmwlth.2000) (stating that events supporting a psychiatric injury claim must be extraordinary and not envisioned as a part of work), the WCJ concluded that based on the testimony and exhibits offered by SEPTA, the October 2006 incident was "not an abnormal working condition that other employees in claimant's classification would not be exposed to." WCJ F.F. No. 21. The Board affirmed, noting that the WCJ found SEPTA's witnesses credible as to the frequency of operator assaults and training provided. Therefore, the incident could not be considered abnormal.[1]

McLaurin argues that life-threatening assaults are extremely rare and are thus not normal work conditions for SEPTA bus drivers. He asserts that pursuant to *Hershey Chocolate Co. v. Workmen's Compensation Appeal Board*, 546 Pa. 27, 682 A.2d 1257 (1996), a claim for psychic injury can be proved by showing either actual extraordinary events that caused the trauma or abnormal working conditions over a long period of time that caused the psychic injury. The Court in *Hershey Chocolate Co.* explained that psychic injury cases are fact-sensitive and that for work conditions to be considered abnormal, they must be evaluated in the context of the specific employment. Here, it is undisputed that McLaurin suffered a psychic injury as a result of an incident where a gun was pointed at him by a passenger. He claims that the training materials offered by SEPTA do not address a potential assault with a firearm, and he notes Hopson's comment that "[n]obody expects to go out and get a gun put in their face." Notes of Testimony (N.T.), 8/23/07 at 20, R.R. at 243a.[2]

---

1. The Court's review is limited to determining whether constitutional rights were violated, an error of law was committed, a practice or procedure of the Board was not followed or the findings of fact are not supported by substantial evidence in the record. *Peterson v. Workers' Compensation Appeal Board (Wal Mart)*, 938 A.2d 512 (Pa.Cmwlth.2007). The determination of whether a claimant established an abnormal work condition is a question of law that is fully reviewable on appeal. *Davis v. Workers' Compensation Appeal Board (Swarthmore Borough)*, 561 Pa. 462, 751 A.2d 168 (2000).

2. McLaurin highlights testimony by Selvato that from June 1, 2006 to June 1, 2007 he was aware of two incidents in which a gun was pulled on a driver. Using Selvato's estimate that SEPTA employs between 1,500 and 1,600 bus drivers, McLaurin calculates that in that time frame a bus driver stood a .0013 chance (2 divided by 1500 = .0013) of being threatened with a firearm. McLaurin further argues that of the incidents summarized by the WCJ, there were only five incidents from Au-

SEPTA cites *Babich v. Workers' Compensation Appeal Board (CPA Department of Corrections)*, 922 A.2d 57 (Pa. Cmwlth.2007), where the Court acknowledged that psychic injury cases are highly fact-sensitive and set forth a two-step process of reviewing the factual findings and then the legal conclusions. SEPTA submits that the WCJ's finding No. 21 that dangerous conditions are commonplace for SEPTA bus operators is supported by the credible testimony of Hopson and Selvato and the packet of incident reports documenting the assaults, robberies and threats to which its bus drivers are exposed on a daily basis. Although McLaurin would like to ignore all incidents that did not involve a gun, SEPTA cites *Dana Corp. v. Workers' Compensation Appeal Board (Hollywood)*, 706 A.2d 396 (Pa. Cmwlth.1998), arguing that the WCJ as fact-finder determines the weight to be given to any evidence.

SEPTA notes McLaurin's testimony that his bus route went through a high crime area. Citing *City of Philadelphia v. Civil Service Commission*, 565 Pa. 265, 772 A.2d 962 (2001) (standoff with gunman not abnormal work condition for police officer), and *Department of Corrections v. Workers' Compensation Appeal Board (Cantarella)*, 835 A.2d 860 (Pa.Cmwlth. 2003) (assault by inmate not abnormal work condition for prison food service instructor), SEPTA argues that work conditions are not abnormal when they were foreseeable or could have been anticipated. McLaurin experienced a prior incident where someone from outside was shooting in the direction of his bus, and on October 9, 2006 he used his training to escape physical harm. Thus the WCJ's legal conclusions were correct.

■ The Court first examines whether the WCJ's findings as to McLaurin's work conditions were supported by substantial evidence. *See RAG (Cyprus) Emerald Resources, L.P. v. Workers' Compensation Appeal Board (Hopton)*, 590 Pa. 413, 912 A.2d 1278 (2007). The Court must give deference to the WCJ and may overturn the findings only if they are arbitrary and capricious. *Babich.* The WCJ credited the testimony of the SEPTA witnesses as to the frequency of assaults on operators and the company's necessary efforts to train the operators in methods of dealing with dangerous passengers. The WCJ also painstakingly reviewed and summarized SEPTA's incident reports and noted that life-threatening situations occurred with enough frequency to lead her to conclude that they were not abnormal working conditions for employees in McLaurin's classification. This finding was supported by substantial evidence.

■ The legal conclusion reached by the WCJ is supported by the case law on this issue. In *Wilson v. Workmen's Compensation Appeal Board (Aluminum Company of America)*, 542 Pa. 614, 624, 669 A.2d 338, 343 (1996), the Supreme Court explained that "psychic injury cases are highly fact-sensitive and for actual work conditions to be considered abnormal, they must be considered in the context of specific employment." Life-threatening situations have been found to be normal work conditions for police officers, *Davis v. Workers' Compensation Appeal Board (Swarthmore Borough)*, 561 Pa. 462, 751 A.2d 168 (2000), and nurses in maximum security prisons. *Babich.* Abnormal work conditions have been found in *Hopton*,

gust 20, 2005 to May 2, 2007 where a bus driver was threatened by a gun. Therefore, the WCJ erred as a matter of law by concluding that the October 2006 incident constituted a normal work condition.

where a mine worker was subjected to repeated comments of a homosexual nature by his supervisor, and in *City of Pittsburgh v. Logan*, 570 Pa. 500, 810 A.2d 1185 (2002), where a police officer had threats made against him by a gang that included a $50,000 bounty on the officer and his family. Notably, in both *Hopton* and *Logan*, the claimant presented testimony that the incidents underlying their psychic injury were highly unusual.

McLaurin had the burden to prove by objective evidence that his injury was not a subjective reaction to normal work conditions. *Davis.* He offered no proof that the October 2006 incident represented something that a SEPTA bus driver could not anticipate. On the other hand, SEPTA offered evidence showing that such incidents did occur with enough regularity that handling of them had been built into the operators' training program. The WCJ therefore did not commit an error of law by holding that McLaurin's psychic injury was not the result of an abnormal work condition. The order of the Board is affirmed.

### ORDER

AND NOW, this 5th day of June, 2009, the order of the Workers' Compensation Appeal Board is affirmed.