IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Berks Area Regional
Transportation Authority,　　　　　:
　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　Petitioner　:
　　　　　　　　　　　　　　　　　:
　　　　　　v.　　　　　　　　　　: No. 1058 C.D. 2021
　　　　　　　　　　　　　　　　　: Submitted: February 18, 2022
Lena Katzenmoyer　　　　　　　　:
(Workers' Compensation Appeal　　 :
Board),　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　:
　　　　　　　　　　Respondent　:


BEFORE:　　HONORABLE ANNE E. COVEY, Judge
　　　　　　　HONORABLE MICHAEL H. WOJCIK, Judge
　　　　　　　HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WOJCIK　　　　　　　　　　　　FILED: November 8, 2022


　　　　　The Berks Area Regional Transportation Authority, commonly referred to as "BARTA" (Employer), petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed an order of a Workers' Compensation Judge (WCJ) granting Lena Katzenmoyer (Claimant) total disability benefits under the Workers' Compensation Act (Act)[1] for a psychological injury in the form of post-traumatic stress disorder (PTSD), that resulted from an abnormal working condition. Employer contends that the WCJ and the Board erred by finding

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

that Claimant met the required burden of proof that she sustained a compensable psychological injury as a result of two incidents occurring within a two-month period where Claimant's bus was struck by bullets, constituting an abnormal working condition. Employer argues that the WCJ mischaracterized certain evidence of record regarding these two incidents to support the finding of an abnormal working condition. Upon review, we affirm.

The relevant facts as found by the WCJ are as follows. Claimant worked as a bus driver for Employer since 2014. On October 19, 2018, Claimant was driving when she heard and saw shots being fired in her rear view mirror (October incident). Reproduced Record (R.R.) at 135a. Claimant saw people running up the sidewalk and screaming. *Id.* Claimant saw the offender shoot several times behind her bus, and she later learned that the offender shot and killed the victim. *Id.* Her bus was struck twice by bullets. *Id.* Claimant returned to the bus depot, and she informed her supervisor, Sharon Stephens, about the incident the next day. *Id.* Claimant cried after the incident, but she returned to work because she thought she could deal with her symptoms. *Id.* Claimant did not seek treatment after the October incident. *Id.*

Two months later, on December 19, 2018, there was a second incident involving Claimant's bus being shot at and struck by bullets (December incident). R.R. at 135a. Claimant was driving when a big window on the passenger side of the bus was "shot out." *Id.* The driver's side windshield above Claimant's head was also struck with bullets. *Id.* Claimant pulled over and called 911. *Id.* Claimant refused to drive the bus back to the depot, and her supervisor drove the bus. *Id.* After the December incident, Claimant began to experience symptoms including sensitivity to reflections, lights, sounds, and unexpected events. *Id.* Claimant

2

informed her supervisor about the symptoms that she was experiencing and that she felt she should not be driving a bus. *Id.* Claimant sought treatment on January 2, 2019, and began to receive therapy. *Id.* at 136a. Claimant has not returned to work since January 4, 2019. *Id.* Claimant continues to receive therapy for symptoms including nightmares, panic attacks, an extreme startle response, lack of concentration, and fears of being around people. *Id.* Claimant was not aware of any other incidents where shots were fired at buses. *Id.* Claimant received training regarding dealing with vehicles being struck by bullets or other projectiles, but she did not recall the training. *Id.* Claimant's bus was struck by bullets once before, in 2016, but she did not have long-term effects from that incident. *Id.* The October incident was different because Claimant saw a life being taken. *Id.* Claimant was in fear of serious bodily injury and felt her life was threatened in both incidents. *Id.*

On December 5, 2019, Claimant filed two claim petitions, one alleging psychological injury from the October incident, and one alleging psychological injury from the December incident, both of which Employer denied. R.R. at 1a-10a, 135a. Hearings were held before the WCJ at which Claimant presented her own testimony and the deposition testimony from Dr. Christopher Royer (Claimant's expert). Employer presented deposition testimony from Ms. Stephens, its manager of training and safety (manager), and the deposition testimony from Dr. Robert DeSilverio (Employer's expert).

Claimant's expert, a licensed psychologist, opined that Claimant suffered from PTSD based on the October and December incidents. R.R. at 137a. Claimant's expert opined that Claimant met the criteria for PTSD because she experienced or witnessed two events of either actual or threatened death or serious injury. *Id.* Claimant's expert opined that Claimant was unable to return to work

3

because she still had a lot of symptoms, including that "she is cautious, anxious, and distrustful. She has anticipatory anxiety." *Id.* Claimant's expert opined that "[i]t is unsafe for her to be in that mindset. She has a lack of sleep and reflexive reactions which would be a problem while driving a bus." *Id.*

Employer's manager testified, in relevant part, regarding Employer's training for its drivers, including Claimant. Manager worked with Employer since 2004, and as of 2014, worked as Employer's manager of safety and training. R.R. at 138a. Manager testified that Employer provided training on how employees should respond if various projectiles hit a bus. *Id.* Manager testified that in the last three- to four-year period, "there were more busted windows by pellet guns, rocks thrown, and various types of gunshots." *Id.*

Employer's expert, a board-certified psychiatrist and neurologist, opined that Claimant did not suffer from PTSD, because the October incident, the December incident, or both incidents together "do not qualify as traumatic events." R.R. at 137a. Employer's expert opined that the October incident, where Claimant "witnessed a gunshot from a parked car behind her bus," was not enough to trigger PTSD "because [Claimant] was not in danger herself." *Id.* at 138a. Employer's expert opined that Claimant's lack of improvement over time "is a subjective worsening of someone who does not want to go back to work." *Id.* Employer's expert opined that he found "the DSM-5 criteria for [PTSD] to have been watered down for social and political reasons," and that it was incumbent on Employer's expert "to stand for something." *Id.* DSM-5 refers to the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition.

In her decision dated November 25, 2020, the WCJ granted Claimant's claim petitions, concluding that, "[b]ased on the combination of events, Claimant

4

sustained a work[-]related injury of PTSD on December 19, 2018 [the December incident], resulting in a disability commencing January 4, 2019, [Claimant's last day of work,] and ongoing." R.R. at 139a. The WCJ found Claimant's testimony to be credible, stating:

> There is no dispute that the two shooting events occurred. While Employer may argue, and [Employer's expert] may advocate that a shooting at or near a public bus may not be an abnormal working condition, the undersigned finds that two such incidents within eight weeks of each other, particularly where the windshield was shot just over Claimant's head, compounded with a shooting two years prior, is an abnormal working condition.

R.R. at 138a.

The WCJ found the testimony of Employer's manager credible, "but insufficient to establish that Claimant's experiences were other than abnormal working conditions." R.R. at 138a. The WCJ found that Employer's manager

> asserted that in the past three to four years, there had been more busted windows, but provided no information as to whether they were busted when the driver was in the bus, or any definitive statistics about how many gunshots were fired at buses, and particularly how many repeated events were experienced by one driver.

Id.

The WCJ further found the opinions of Claimant's expert "more competent and credible" than those of Employer's expert. R.R. at 138a. The WCJ found that Employer's expert downplayed the value of certain tests performed by Claimant's expert, instead "preferring his skills at divining truth via eye contact." Id. The WCJ also found that Employer's expert's testimony was not "professionally based, and is based on his own admission that it is incumbent upon him to take both a social and political stand against the 'watering down of the DSM-5.'" Id.

5

Employer appealed the WCJ's decision to the Board, on the basis that Claimant failed to prove that she suffered from PTSD and that her mental disability was caused by abnormal working conditions. The Board affirmed the WCJ in a decision dated August 31, 2021. R.R. at 141a-151a. The Board reviewed Claimant's testimony regarding the October and December incidents, noting that Claimant's problems "got worse after the second incident[, the December incident,] to the point where she could not go places, such as eating out or going to the drug store, because she did not trust other people and loud noises set her off." *Id.* at 146a. The Board also reviewed the testimony of Employer's manager, specifically involving bus driver training. Manager testified that

> Claimant underwent new hire training as a driver that included various topics, including a classroom portion that covers bus fires, medical emergencies, and projectiles being thrown at the bus. It specifically went into various types of vandalism that can occur including paint balls, pellet guns, rocks, and bullets. [Manager] testified they have had an increase in the number of busted bus windows over a period of a couple years.

*Id.* (internal citations omitted).

The Board summarized the testimony of Claimant's expert, Employer's expert, and the WCJ's credibility determinations, noting that "determinations of credibility and weight to be accorded evidence are the prerogative of the WCJ, not this Board." R.R. at 148a. The Board concluded that the WCJ did not err "in finding that Claimant had sustained a work-related psychological injury as a result of abnormal working conditions." *Id.* The Board explained that Claimant met her burden of establishing that she had a psychological condition caused by her employment through the unequivocal medical testimony of Claimant's expert, as credited by the WCJ over the testimony of Employer's expert. *Id.* The Board also

6

concluded that Claimant met her burden of proving that her psychological injury was a result of abnormal working conditions, as required by the applicable mental-mental standard. *Id.* at 149a. In evaluating the October incident, the Board stated:

> Instantly, the WCJ found there were two specific extraordinary events that occurred at work which caused Claimant trauma and rose to the level of abnormal working conditions. The first event occurred on October 19, 2018, when Claimant witnessed a man in the street shooting, including hitting her bus twice, and then murdering a person in a car within her view. This was a traumatic event that was outside the usual situation a bus driver would be expected to experience. While [manager] testified that drivers have a short classroom training on various projectiles hitting the bus and vandalism, Claimant's situation was far more severe than merely vandalism or rocks being thrown at the bus. Her bus was shot at and the shooter murdered another person immediately afterwards, while Claimant witnessed the event occur. We conclude this situation rises to the level of an abnormal working condition.

*Id.*

> In evaluating the December incident, the Board stated:

> The second event occurred on December 19, 2018, when Claimant's bus was shot at multiple times, blowing out the passenger window and hitting the windshield within close range of hitting her head. There were also other passengers on the bus at the time who began to panic at the situation, and Claimant was forced to flee the scene with her bus and call the police. This again amounts to a[] unique and unusual situation that would be unexpected for a bus driver to experience. It was not mere vandalism but actual gunfire being directed at a bus full of people, shooting out a window and almost hitting Claimant in the head if the windshield had not stopped the bullet. We conclude this situation rises to the level of an abnormal working condition.

R.R. at 150a.

7

The Board concluded that although each individual event could alone rise to the level of an abnormal working condition, "the combination of the two within two months of each other even more clearly establishes abnormal working conditions." R.R. at 150a. The Board explained that although "a city bus driver could potentially experience events such as vandalism or projectiles being thrown at the bus, these two events both were far more severe and were highly unusual and traumatic, far outside what bus drivers would be expected to experience at their jobs." *Id.*

Employer then petitioned this Court for review.[2] Employer did not seek review of Claimant's PTSD diagnosis and focused its arguments on the Board's alleged error in concluding that the two incidents constituted an abnormal working condition.

In addition to the Court's usual review in a workers' compensation appeal, when the matter involves a mental-mental injury, we must also consider whether Claimant sustained her burden of proof that the mental injury she suffered is something other than a subjective reaction to normal working conditions, *i.e.*, that Claimant's mental injury is a result of abnormal working conditions. *Payes v. Workers' Compensation Appeal Board (Pennsylvania State Police)*, 79 A.3d 543 (Pa. 2013); *Pennsylvania Liquor Control Board v. Workers' Compensation Appeal Board (Kochanowicz)*, 108 A.3d 922 (Pa. Cmwlth. 2014).

---

[2] Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. *Bloom v. Workmen's Compensation Appeal Board (Keystone Pretzel Bakery)*, 677 A.2d 1314, 1318 n.4 (Pa. Cmwlth. 1996). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 612 A.2d 434, 436 (Pa. 1992).

8

In *Payes*, the Supreme Court held that a state police trooper sustained his burden of proving that an abnormal working condition existed and that he was entitled to benefits for a mental-mental injury[3] when he accidentally struck and killed a pedestrian with his police car, and attempted to revive her while attempting to divert traffic from hitting him and the pedestrian. *Payes*, 79 A.3d at 556-57. As our Supreme Court stated, the determination of whether Claimant's mental injury is a result of abnormal working conditions is a "mixed question of law and fact." *Id.* at 549. Mental or psychic injuries are highly fact sensitive, and for the actual working conditions to be considered abnormal, they must be considered in the context of specific employment. *Id.* at 552. Such a fact-sensitive inquiry "'requires deference to the fact-finding functions of the WCJ,'" and, therefore, review of those factual findings is limited to determining whether they are supported by substantial evidence, and they may only be overturned "'if they are arbitrary and capricious. Thus, . . . appellate review of this question [is] a two-step process of reviewing the factual findings and then the legal conclusion.'" *Id.* (quoting *RAG (Cyprus) Emerald Resources, L.P. v. Workers' Compensation Appeal Board (Hopton)*, 912 A.2d 1278, 1284 n.6 (Pa. 2007)).

Here, Employer argues that the Board erred in describing the October incident, and relying on its inaccurate description to support finding an abnormal

---

[3] As the Supreme Court explained:

> For purposes of determining compensation under the Act, mental or psychic injuries are divided into three categories: mental-mental, whereby a mental or psychic condition is caused by a psychic stimulus; mental-physical, whereby psychic injury manifests itself in some physical form; and physical-mental, whereby a physical injury results in psychic distress.

*Payes*, 79 A.3d at 550. Here, Claimant is asserting a mental-mental injury.

9

working condition. Employer objects to the Board's characterization of the October incident as one where "Claimant witnessed a man in the street shooting, including hitting her bus twice, and then murdering a person in a car within her view." R.R. at 149a. Specifically, Employer argues that Claimant did not witness the October incident as the Board describes, because Claimant testified that she heard, but did not see, the offender fire a gun behind her bus; Claimant did not learn until the next day that the offender killed someone; and Claimant did not actually view the bullet holes in her bus. Claimant responds that the Board did not mischaracterize the October incident, when Claimant testified she heard and saw seven gunshots, which she described "like fire." *Id.* at 19a. Claimant further responds that Employer's manager later discussed the October incident with Claimant, describing details of the incident captured on the bus video, and confirming that the bullet holes in the bus "were big" and not made by a "grandma's gun." *Id.* at 22a.

On this point we discern no error in the Board's description of the October incident, based on Claimant's testimony as credited by the WCJ. We are mindful that in workers' compensation cases, "the WCJ is the ultimate fact-finder who must determine credibility and evidentiary weight. In this role, the WCJ freely evaluates the evidence offered and can accept or reject any witness'[s] testimony, in whole or in part, including that of medical witnesses." *Davis v. Workers' Compensation Appeal Board (City of Philadelphia)*, 753 A.2d 905, 909 (Pa. Cmwlth. 2000). As this Court noted, "[w]hile this Court can and should consider the competency and sufficiency of evidence presented before a WCJ, the WCJ's assessment of witness credibility is not subject to our review on appeal." *Id.* Furthermore, in a substantial evidence analysis where, as here, both parties presented evidence, "it does not matter that there is evidence in the record which supports a

10

factual finding contrary to that made by the WCJ, rather, the pertinent inquiry is whether there is any evidence which supports the WCJ's factual finding." *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998). This Court "may overturn a credibility determination only if it is arbitrary and capricious, so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational." *West Penn Allegheny Health System, Inc. v. Workers' Compensation Appeal Board (Cochenour)*, 251 A.3d 467, 475 (Pa. Cmwlth. 2021) (citation omitted).

Employer does not dispute that Claimant's bus was shot at and struck by bullets, or that Claimant heard and saw multiple gunshots take place behind her bus during the October incident. The fact that Claimant did not learn until the next day that a person was killed in the incident, or that she did not view the bullet holes in her bus, does not render the Board's description inaccurate. We also discern no error in the Board's finding that the October incident constituted an abnormal working condition, based on this description. We acknowledge that mental injuries as a result of abnormal working conditions present a mixed question of law and fact. *Payes*, 79 A.3d at 549. As guided by *Payes*, mental injuries are highly fact sensitive, and the question of whether the events may be considered abnormal must be considered in the context of specific employment. *Id.* at 552. Such a fact-sensitive inquiry requires deference to the fact-finding functions of the WCJ, which may be overturned only if they are arbitrary and capricious. *Id.* Based upon our review of the entire record, we discern no error in the WCJ's or Board's conclusion that these two incidents, either separately or together, constituted abnormal working conditions, in the context of Claimant's job as a bus driver.

Employer also argues that the Board erred in failing to properly account for Claimant's training in determining whether these incidents constituted abnormal working conditions. Critical here is the WCJ's finding that Employer's manager's testimony was "credible, but insufficient" to establish that Claimant's experiences constituted abnormal working conditions. Employer argues that this Court's decision in *McLaurin v. Workers' Compensation Appeal Board (SEPTA)*, 980 A.2d 186 (Pa. Cmwlth. 2009), should govern here, which Claimant disputes.

In *McLaurin*, this Court considered whether a bus driver who was threatened by a young man with a gun while he was driving the bus, and who suffered PTSD, met his burden to prove that his mental injury was caused by abnormal working conditions. In *McLaurin*, the WCJ credited the testimony of the employer's witness, who testified that bus drivers were advised to expect dangerous passengers, and bus drivers received specific training on how to deal with dangerous passengers. *McLaurin*, 980 A.2d at 188-89. The WCJ also credited the testimony of another employer witness, who presented statistics and incident reports documenting the number of passenger disturbances on buses, the number of assaults on bus drivers, and the number of bus drivers threatened with a gun, during specific time periods. *Id.* Because this credited testimony showed that bus drivers were specifically advised to expect and respond to dangerous passengers, and that threats, threats with guns, and assaults occurred with some frequency on buses, the WCJ found that the bus driver's incident was not an abnormal working condition. *Id.* at 190. This Court explained that the bus driver failed to prove by objective evidence that his mental injury was not a subjective reaction to normal work conditions, or that his incident "represented something he could not anticipate." *Id.* On the other hand, the employer "offered evidence showing that such incidents did occur with

12

enough regularity that handling of them had been built into the operators' training program." *Id.* Based on the credited evidence presented, we affirmed the Board's denial of benefits to the claimant for a mental-mental injury because it did not result from an abnormal work condition. *Id.*

*McLaurin* is distinguishable from the facts presented here, because the record lacks evidence that the events that Claimant experienced occurred with enough regularity that she could have anticipated them, or that she received specific training on how to respond to them. Claimant credibly testified that she was not aware of other drivers being shot at while driving. Employer presented no statistics or reports regarding other incidents of its bus drivers being shot at while driving. Although Employer's manager credibly testified that in the last three to four years, Employer experienced more busted windows from pellet guns, rocks, and various types of gunshots, Employer presented no evidence regarding the frequency or specifics of these incidents, whether they occurred while drivers were on their buses, or whether any other drivers had been shot at while driving. Further, although Employer's manager credibly testified, and Claimant agreed, that Claimant received training on how to respond to emergency situations, including those where a projectile was aimed at a bus, this general training is insufficient to support a conclusion that Claimant should have anticipated, and was trained to respond to, being shot at while driving a bus.

In *Kochanowicz*, 108 A.3d 922, this Court affirmed the WCJ's award of benefits for a mental-mental injury caused by abnormal working conditions, when a manager of a liquor store suffered a mental injury after being robbed at gunpoint. Although the claimant in *Kochanowicz* received training involving workplace violence, and robberies had occurred at other liquor stores, we held that "such

13

training was not entirely relevant, and not dispositive, of whether the armed robbery [the c]laimant experienced was a normal working condition." *Id.* at 933. In reaching this result, the Court distinguished *McLaurin* and determined that the "specific armed robbery" that the claimant experienced was "not a normal working condition." *Id.* at 934. Similarly here, we find no error in the Board's conclusion that the specific events Claimant experienced in the October incident, the December incident, or both, constituted an abnormal working condition.

For the foregoing reasons, we affirm the Board's order.

MICHAEL H. WOJCIK, Judge

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Berks Area Regional                         :
Transportation Authority,                   :
                                            :
                    Petitioner              :
                                            :
            v.                              :   No. 1058 C.D. 2021
                                            :
Lena Katzenmoyer                            :
(Workers' Compensation Appeal               :
Board),                                     :
                                            :
                    Respondent  :

# **O R D E R**

AND NOW, this 8th day of November, 2022, the order of the Workers'

Compensation Appeal Board dated August 31, 2021, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge