IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Premium Transportation Staffing,   :
Inc.,   :
         Petitioner   :
  :
      v.   :   No. 1329 C.D. 2022
  :   Argued: September 11, 2023
Robert Welker (Workers'   :
Compensation Appeal Board),   :
         Respondent   :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                  HONORABLE MICHAEL H. WOJCIK, Judge
                  HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT                FILED: November 30, 2023

       Premium Transportation Staffing, Inc. (Employer) petitions for this Court's review of an adjudication of the Workers' Compensation Appeal Board (Board) that awarded benefits to Robert L. Welker (Claimant) for a psychological injury that arose from an abnormal working condition. In doing so, the Board explained that it was required to defer to the finding of the Workers' Compensation Judge (WCJ) that a truck fire experienced by Claimant constituted an abnormal working condition. We conclude, however, that the relatively minor truck fire that was extinguished in two minutes without physical injury to anyone at the fire did not constitute an abnormal working condition for a truck driver. Accordingly, we reverse.

## Background

       Claimant filed a claim petition seeking workers' compensation benefits for a bilateral middle finger frostbite and post-traumatic stress disorder (PTSD). Claimant's petition alleged that he sustained these injuries in February 2015, when the tractor-trailer he was driving caught on fire. Employer filed an answer denying

the material allegations in the petition, and the matter was assigned to a Workers' Compensation Judge (WCJ).[1] Thereafter, Claimant filed an amended claim petition, which withdrew the allegation of a physical injury, leaving only the PTSD claim. The parties agreed to bifurcate the proceeding, separating the question of whether the truck fire experienced by Claimant constituted an abnormal working condition from the question of whether the truck fire caused Claimant to sustain a disabling work injury.

The factual background is largely undisputed. Claimant obtained a commercial driver's license after his 2011 attendance at the MTD Truck Driver School, where students were taught that in the case of a fire, they should separate the trailer from the truck. If that was not possible, then the driver was instructed to leave the vehicle. The written test for a commercial driver's license covers safety issues, including the possibility of fires. After receiving his commercial license, Claimant worked as a long-haul truck driver throughout the United States and Canada. In April of 2014, Claimant was hired by Employer.

On February 5, 2015, Employer sent Claimant to York Haven, Pennsylvania, to pick up a truck. His pre-trip safety inspection included making sure a fire extinguisher was on board the truck. While Claimant was driving the truck on the Pennsylvania Turnpike, the vehicle's yellow "check engine" light came on. Because there was a Turnpike truck stop about 20 miles away, Claimant decided to continue. Several miles farther down the road, the red "engine shutdown" light came on. Claimant tried to override the engine shutdown but was not successful. At that point, the truck was travelling in the right lane, up a steep hill, at approximately 25

---

[1] When Claimant did not appear for an ordered independent medical examination, the WCJ dismissed his claim petition, without prejudice to refile.

2

miles per hour. As Claimant pulled the truck onto the shoulder, he saw flames outside the truck reflected in the passenger side mirror. After Claimant completed the stop, smoke began to enter the cab from the passenger side window.

Claimant grabbed his cell phone, exited the vehicle, and ran 100 yards up the road, where he called Employer's dispatcher. As Claimant watched from that distance, another truck pulled off the road behind Claimant's truck. The driver of the second truck put out the fire, first using his own fire extinguisher and then the extinguisher on Claimant's truck. Claimant returned and helped the other driver throw snow on the embers of the fire.

Employer's dispatcher sent a tow truck, and Claimant filed a report with the Pennsylvania State Police. Claimant rode with the tow truck to the repair shop and spent the night in a hotel arranged by Employer. After a day, Claimant drove the replacement truck to Chicago.

On the basis of the above-summarized account of the fire, the WCJ issued an interlocutory order holding that Claimant had been exposed to an abnormal working condition sufficient to establish a compensable "mental/mental" injury. Citing *Payes v. Workers' Compensation Appeal Board (Pennsylvania State Police)*, 79 A.3d 543, 556 (Pa. 2013), the WCJ concluded that "the truck fire at issue falls into the category of a highly unusual and singular event." WCJ Interlocutory Order, 7/15/2019, Finding of Fact ¶11. Consistent with the parties' agreement, the proceeding then moved to the merits of the claim, *i.e.*, the existence and duration of Claimant's alleged disability.

Each party presented medical evidence. Claimant presented the deposition testimony of Jay Liss, M.D., a board-certified psychiatrist, who evaluated Claimant on April 20, 2016. Dr. Liss diagnosed Claimant with PTSD caused by the

3

truck fire. Dr. Liss further opined that Claimant's PTSD was progressive and permanently disabling, leaving Claimant unable to work in any capacity.

In opposition, Employer presented the deposition testimony of Burton Singerman, M.D., also a board-certified psychiatrist. He evaluated Claimant on November 23, 2019, and reviewed Claimant's medical records.[2] Dr. Singerman opined that Claimant did not sustain PTSD as a result of the February 5, 2015, truck fire. Rather, Dr. Singerman diagnosed Claimant with a stressor-related disorder. Approximately 10 to 20 percent of the stressor disorder related to the truck fire, and the remainder resulted from his "complete focus on workman's (sic) compensation and his anger with everybody around that, that he's being mistreated." Singerman Deposition at 41; Reproduced Record at 439a (R.R.___). Dr. Singerman opined "that any part of the stressor-related disorder that was related to his fear of being trapped in the truck has fully resolved." *Id.* at 45; R.R. 443a. Dr. Singerman also diagnosed Claimant with a personality disorder wholly unrelated to the truck fire. Dr. Singerman disagreed with Dr. Liss that PTSD is chronic and irreversible and opined that Claimant "has the focus and ability to function" in full-time work. Board Adjudication, 9/29/2022, at 13; R.R. 83a.

Claimant testified that he was officially terminated from employment as of July 31, 2015, and he has not worked since. Claimant did not begin treatment for his PTSD until approximately two-and-a-half years after the truck fire. He testified that in 2017, he suffered a panic attack while preparing to board a bus, which prompted him to seek treatment at the John C. Murphy Health Center. At present, Claimant receives no treatment for PTSD. Claimant has no difficulty driving his

---

[2] They showed that in 2017, Claimant was treated at John C. Murphy Health Center where he was hospitalized for a short time for anxiety and suicidal ideation. Singerman Deposition at 27; Reproduced Record at 425a. Claimant was referred to an outpatient social worker.

4

personal vehicle, although he continues to experience issues with enclosed spaces. Claimant acknowledged he was not burned in the 2015 truck fire and was able to escape the truck without difficulty.

At present, Claimant's only work is managing properties he inherited, as well as properties owned by others. He has not driven a tractor-trailer since 2015.

On March 17, 2022, the WCJ issued a decision holding that Claimant sustained a work-related injury in the nature of PTSD, which disabled Claimant as of April 20, 2016, when he was seen by Dr. Liss. However, the WCJ found Claimant to be fully recovered as of November 23, 2019, the date of his evaluation by Dr. Singerman. Claimant and Employer each appealed the WCJ's decision to the Board.

In his appeal, Claimant argued that the WCJ failed to issue a reasoned decision with respect to his disability. He asserted that the WCJ did not adequately explain his finding that Claimant had fully recovered from PTSD as of November 23, 2019.

In its appeal, Employer argued that the WCJ erred in concluding that the truck fire constituted an abnormal working condition. Employer contended that Claimant had been trained to handle high stress events, such as truck fires, and the situation was foreseeable for a truck driver. This is best illustrated by the fact that another truck driver following Claimant pulled over and put out the fire using his own extinguisher. Further, the fire on Claimant's truck was relatively minor; did not cause any burns; and was successfully and quickly extinguished. Employer argued that, at most, Claimant sustained a subjective reaction to a normal working condition.

The Board affirmed the WCJ decision in its entirety.

5

Citing *Frog, Switch & Manufacturing Co. v. Workers' Compensation Appeal Board (Johnson)*, 106 A.3d 202 (Pa. Cmwlth. 2014), the Board explained that when seeking workers' compensation benefits for a psychic injury, the claimant must prove that the injury was more than a subjective reaction to normal working conditions. Here, the WCJ had to determine whether the truck fire represented a "singular, extraordinary event occurring during the work shift that caused a psychological injury." Board Adjudication at 16. The Board affirmed the WCJ's conclusion that Claimant's mental injury was caused by an abnormal working condition, reasoning that deference was owed to the WCJ on this question.

As to Claimant's appeal, the Board affirmed the WCJ. It reasoned that credibility determinations fall within the province of the WCJ, who found Dr. Singerman more credible than Dr. Liss, at least with respect to the continuation of Claimant's disability. Accordingly, the Board affirmed the WCJ's award of disability compensation for a closed period of time.

Both parties separately petitioned this Court for review of the Board's adjudication.[3] The instant matter concerns the Employer's appeal.

**Appeal**

In its appeal,[4] Employer raises one issue. It contends that the Board erred in affirming the WCJ's conclusion that the truck fire of February 5, 2015,

---

[3] Claimant's petition for review challenging the duration of the disability compensation award and its termination is docketed at 1191 C.D. 2022. A separate opinion is filed at *Welker v. Premium Transportation Staffing, Inc. (Workers' Compensation Appeal Board)* (Pa. Cmwlth., No. 1191 C.D. 2022, filed November 30, 2023).

[4] Our review determines whether the workers' compensation judge's (WCJ) findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Phoenixville Hospital v. Workers' Compensation Appeal Board (Shoap)*, 81 A.3d 830, 838 (Pa. 2013). This Court may not assess credibility or reweigh

6

constituted an abnormal working condition. Claimant responds that the WCJ appropriately weighed the evidence and reached a conclusion fully consistent with *Payes*, 79 A.3d 543.

## Analysis

We begin with a review of the legal principles applicable to work injuries that are psychological in nature.

In a claim petition, the claimant bears the burden of proving all necessary elements to support an award of compensation. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 634 A.2d 592, 595 (Pa. 1993). A claimant must prove that the alleged injury is both work related and disabling. *Lewis v. Workmen's Compensation Appeal Board*, 498 A.2d 800, 802 (Pa. 1985).

For an award of workers' compensation benefits for a psychic injury, the claimant must prove by objective evidence a mental injury is other than a subjective reaction to normal working conditions. *Martin v. Ketchum, Inc.*, 568 A.2d 159, 164-65 (Pa. 1990). The Pennsylvania Workers' Compensation Act (Act)[5] places psychological injuries into three distinct categories: "(1) the 'mental/physical' injury where a psychological stimulus causes a physical injury;

---

evidence since the authority to do so rests exclusively with the WCJ. *City of Pittsburgh v. Workers' Compensation Appeal Board (Marinack)*, 37 A.3d 39, 42 n.4 (Pa. Cmwlth. 2012). In questions of law, the Court's scope of review is plenary. *Donovan v. Workers' Compensation Appeal Board (Academy Medical Realty)*, 739 A.2d 1156, 1161 (Pa. Cmwlth. 1999). "Whether the findings of fact support a conclusion that the claimant has been exposed to abnormal working conditions is a question of law . . . that is fully reviewable on appeal." *Davis v. Workers' Compensation Appeal Board (Swarthmore Borough)*, 751 A.2d 168, 174 (Pa. 2000). "The Commonwealth Court has long characterized the question of whether a claimant has been exposed to abnormal working conditions as a mixed question of law and fact reviewable on appeal." *Payes v. Workers' Compensation Appeal Board (Pennsylvania State Police)*, 79 A.3d 543, 550 n.3 (Pa. 2013).

[5] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

7

(2) the 'physical/mental' injury where a physical stimulus causes a psychic injury; and (3) the 'mental/mental' injury where a psychological stimulus causes a psychic injury." *Ryan v. Workmen's Compensation Appeal Board (Community Health Services)*, 707 A.2d 1130, 1133-34 (Pa. 1998). "[W]here a psychic injury is claimed, regardless of whether it is manifested through psychic symptoms alone or physical symptoms as well, the claimant must establish that the *injury arose from abnormal working conditions* in order to recover benefits." *Davis*, 751 A.2d at 170 (emphasis added). It is not enough to show that employment events have precipitated a psychiatric injury; rather, "the claimant must still prove the events to be abnormal before he can recover." *Wilson v. Workmen's Compensation Appeal Board (Aluminum Company of America)*, 669 A.2d 338, 344 (Pa. 1996) (citation omitted). Whether a claimant has been exposed to abnormal working conditions is a mixed question of fact and law, and the question must be evaluated "in the context of specific employment." *Payes*, 79 A.3d at 552.

Employer argues that the Board and WCJ erred. Employer contends that the WCJ misapplied the standard for an abnormal working condition, which is "extraordinarily unusual and distressing." *Payes*, 79 A.3d at 556. Here, the evidence showed that the "minor truck fire that occurred was not extraordinarily unusual." Employer Brief at 20-21. Specifically, Claimant was traveling at a slow rate of speed, *i.e.*, 25 miles per hour; understood from multiple warnings that there was a problem with the truck's engine; safely pulled off the roadway; had no difficulty exiting the truck; and had no difficulty moving a safe distance away from the truck. *Id.* The engine fire "was clearly something an over-the-road truck driver might expect to occur in the course of his/her employment." *Id*. at 22.

8

Claimant rejoins that the Board and the WCJ correctly determined that the truck fire constituted an abnormal working condition. Claimant asserts his case is "largely on point with those of the store manager in *Kochanowicz*." Claimant Brief at 13 (citing *Pennsylvania Liquor Control Board v. Workers' Compensation Appeal Board (Kochanowicz II)*, 108 A.3d 922 (Pa. Cmwlth. 2014)). As in *Kochanowicz II*, Claimant "was subjected to a potential harm that was not completely unforeseen"; Employer "had taken steps to insulate against harm in similar situations" by providing fire extinguishers; and Claimant "[was] aware of similar events happening in other locations." Claimant Brief at 13. Claimant argues that in *Kochanowicz II*, these mitigating factors were determined irrelevant to the question of whether the claimant had experienced an abnormal working condition.

We turn to *Payes* and *Kochanowicz II*, on which both parties rely.

In *Payes*, 79 A.3d 543, the claimant was a state trooper with 12 years of experience. In the early morning hours of November 29, 2006, a woman dressed entirely in black clothing suddenly ran in front of the claimant's vehicle as he was traveling on Interstate 81. The vehicle hit her, and she flew over the length of the vehicle, landing on the highway. The claimant turned his vehicle around into the lane of travel and began mouth-to-mouth resuscitation, while she was bleeding from her mouth. At the same time, the claimant had to prevent oncoming traffic from running over them. The victim could not be revived and was pronounced dead at the scene. It was later determined that she suffered from mental illness and that she had been seen pacing along the interstate prior to running in front of the patrol vehicle.

The claimant returned to work on January 2, 2007, but experienced such anxiety and stress that he left work three days later and did not return. Thereafter,

9

he filed a petition seeking workers' compensation benefits for PTSD as a result of the incident. The WCJ awarded compensation, concluding that the claimant had sustained a mental injury that arose from an abnormal working condition.

On appeal, the Board reversed the WCJ, explaining that given the stressful and perilous nature of a state trooper's job, the incident was not abnormal. This Court affirmed, reasoning that a police officer

> can be expected to be witness to horrible tragedy. This includes . . . traumatic visuals such as injured children, maimed adults, and, unfortunately, death. These events will not be deemed "extraordinary" or "abnormal."

*Payes v. Workers' Compensation Appeal Board (Commonwealth of PA/State Police)*, 5 A.3d 855, 861 (Pa. Cmwlth. 2010).

On further appeal, the Pennsylvania Supreme Court reversed this Court, holding that the WCJ's "well-supported facts" established "the *existence of an extraordinarily unusual and distressing single work-related event* experienced by [the claimant], resulting in his disabling mental condition, where such single and comprehensive work-related event constituted an abnormal working condition as a matter of law." *Payes*, 79 A.3d at 556-57 (emphasis added). The Supreme Court reasoned that the WCJ's findings established that the state trooper's experience "was not an event normally experienced or anticipated by employees in [the claimant's] line of work." *Id*. at 556.

In *Kochanowicz II*, 108 A.3d 922, the claimant was a state liquor store manager. One evening as the store was closing, a masked gunman put a gun to the claimant's head while brandishing a second gun and demanded the claimant to empty the store safe and cash register. During the robbery, the gunman kept a gun directed at the claimant's head. The gunman tied the claimant and a co-worker to

10

chairs with duct tape. When the claimant exhibited anxiety, the gunman prodded claimant with his gun, asking whether he was "impatient," *i.e.*, to die. *Id.* at 924.

The claimant had never experienced a robbery in 30 years of employment. He began treating with a psychologist, who diagnosed him with PTSD caused by the robbery. The claimant sought workers' compensation benefits, which the WCJ awarded, holding that the claimant proved that the event triggering his PTSD diagnosis arose from an abnormal working condition. The Board affirmed.

This Court reversed. *Pennsylvania Liquor Control Board v. Workers' Compensation Appeal Board (Kochanowicz I)*, 29 A.3d 105 (Pa. Cmwlth. 2011). The employer had provided the claimant training on workplace violence, including robbery and theft, and the record showed that other stores in the area had experienced a total of 99 robberies over a six-year period.[6] We concluded that experiencing a robbery was a normal condition of employment as a retail liquor store employee. On further appeal, the Supreme Court vacated and remanded for reconsideration in light of its holding in *Payes*.[7] Upon remand, we held that the claimant established that this specific armed robbery was not a normal working condition. *Kochanowicz II*, 108 A.3d 922.

Here, Claimant experienced an employment event that was not an everyday occurrence, and it was singular for him. However, the truck fire he experienced bears little semblance to the "extraordinarily unusual" events that occurred in the *Payes* or *Kochanowicz* cases.

---

[6] Notably, the WCJ did not credit this evidence because the training was general in nature and not focused specifically on armed robbery. *Kochanowicz II*, 108 A.3d at 932.

[7] *See Kochanowicz v. Workers' Compensation Appeal Board (Pennsylvania Liquor Control Board)*, 85 A.3d 480 (Pa. 2014).

11

Claimant's truck was equipped with a fire extinguisher; his pre-trip inspection ensured that fire extinguishers were onboard; and he had seen truck fires and the burned remains of trucks. In short, the record established that in Claimant's "line of work," truck drivers "experience" and "anticipate" fires. *Payes*, 79 A.3d at 586. This is why another driver responded quickly, and successfully, upon spotting the fire on Claimant's truck. Moreover, Claimant was not "trapped" inside the cab of his truck during the fire; rather, he was able to leave the truck cab and retreat to safety. Claimant acknowledges that his "ordeal" lasted two to three minutes. Claimant Brief at 13.

The facts of this case do not approach the "extraordinarily unusual" events that occurred in *Payes* and *Kochanowicz II*. *See Payes*, 79 A.3d at 556. Unlike *Payes*, the truck fire did not result in death or injury to anyone, including the good Samaritan who extinguished the fire. Unlike *Kochanowicz II*, Claimant was able to retreat from the danger without difficulty and, eventually, assist in the resolution of the fire.

We reject Claimant's contention that mitigation factors, such as knowledge of the risk and training therefor, are irrelevant to the question of whether an employment event constitutes an abnormal working condition. This contention is premised on a misunderstanding of *Kochanowicz II*. It was in the context of the particular facts of *Kochanowicz II* that the WCJ found the claimant's training "not entirely relevant, and not dispositive, of whether the armed robbery claimant experienced was a normal working condition." *Kochanowicz II*, 108 A.3d at 933. Specifically, the WCJ found that the employee training on general workplace violence had limited relevance to "armed robberies" and, specifically, to a "robbery by gunpoint to the back of the head." *Id*. at 931. Nevertheless, anticipation of, and

12

training for, a workplace hazard remain relevant to the analysis in a claim of abnormal working condition. Neither factor was abolished in either *Payes* or *Kochanowicz II*.[8]

Whether a serious, even dangerous, event constitutes an abnormal working condition is highly fact sensitive. *Payes*, 79 A.3d at 549 n.3. Our decisions in *McLaurin v. Workers' Compensation Appeal Board (SEPTA)*, 980 A.2d 186 (Pa. Cmwlth. 2009), and *Berks Regional Transportation Authority v. Katzenmoyer (Workers' Compensation Appeal Board)* (Pa. Cmwlth., No. 1058 C.D. 2021, filed November 8, 2022),[9] illustrate this point. Both cases involved bus drivers and firearms but reached different conclusions.

In *McLaurin*, several young men boarded the bus driven by the claimant without paying their fares. At the end of the route, one of them pulled a gun out of his pocket. The claimant pleaded with the gunman, who put his weapon away and left. After being diagnosed with PTSD, the claimant sought workers' compensation benefits. The WCJ concluded that the incident did not constitute an abnormal working condition, based on the frequency of such events and the training provided to bus drivers. This Court affirmed, stating that the claimant did not prove that the incident "represented something that [he] could not anticipate." *McLaurin*, 980 A.2d at 191.

In *Katzenmoyer*, the claimant witnessed a man in the street shooting, hitting her bus twice, and then murdering a person in a car. *Katzenmoyer*, slip op. at 3. The claimant saw and heard seven gunshots. She returned to work, believing

---

[8] Indeed, *Payes* did not overrule prior rulings on abnormal working conditions but, rather, refined the analysis.

[9] An unreported opinion of this Court issued after January 15, 2008, may be cited for its persuasive value but not as binding precedent. Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

13

she could deal with her fears. Two months later, a bus being driven by the claimant was sprayed with bullets, blowing out the passenger window and hitting the windshield within close range of her head. She fled and called police. The claimant filed two claim petitions for each incident, which the WCJ granted.[10] This Court affirmed. In doing so, we observed that the record lacked evidence about whether bus shootings are anticipated by drivers or what, if any, training was given on this specific threat. This illustrates the continuing relevance of these mitigation factors.

*McLaurin* and *Katzenmoyer* highlight the fact-sensitive nature of an abnormal working condition case. The appearance of a gun in or near a bus is not dispositive of whether the bus driver has experienced an abnormal working condition. Rather, it is all the circumstances surrounding the weapon event that must be considered.

Here, the truck fire that caused Claimant to exit his truck did not, in itself, constitute an abnormal working condition in a profession where drivers are trained to anticipate such an event and are equipped to respond. This does not mean that all truck fires constitute a normal working condition in the truck driving profession. However, there must be something "extraordinarily unusual" about a particular truck fire before it can be held to be an abnormal working condition.

This brings us to the importance of the WCJ's findings of fact in an abnormal working condition case, as we explained in *Kochanowicz II*, 108 A.3d 922.

---

[10] *Payes*, 79 A.3d at 556, described an abnormal working condition as a "highly unusual and singular event." "Singular" is an adjective that denotes the opposite of "plural," and it also means "unusual" or "exceptional." *Merriam-Webster Dictionary* online at: https://www.merriam-webster.com/dictionary/singular#:~:text=Synonyms%20of%20singular-,1,one%20person%2C%20thing%2C%20or%20instance (last visited November 30, 2023). In *Katzenmoyer*, the driver's bus was riddled with bullets twice in two months. Notwithstanding these multiple occurrences, each shooting was extraordinarily unusual.

14

There, the WCJ made detailed findings of fact relevant to the robbery of the claimant by a masked gunman. Here, the WCJ's findings of fact consist of a meticulous summary of each witness's testimony and conclude with the statement: "I find as fact that the February 5, 2015, incident constituted an abnormal working condition." WCJ Interlocutory Order, 7/15/2019, Finding of Fact ¶11. The rationale for this conclusory finding of fact consists entirely of legal, not factual, analysis. The WCJ did not identify "extraordinarily unusual" facts in this truck fire, as did, for example, the WCJ in *Kochanowicz II*, 108 A.3d 922. Rather, the WCJ opined that his finding was compelled by *Payes*, 79 A.3d 543.

*Payes* explained an abnormal working condition presents a mixed question of law and fact. Accordingly, "the more fact intensive the inquiry, the more deference a reviewing court should give to the [WCJ's] findings below." *Payes*, 79 A.3d at 549 n.3 (quoting *Gentex Corporation v. Workers' Compensation Appeal Board (Morack)*, 23 A.3d 528, 534 n.10 (Pa. 2011)). Nevertheless, the "ultimate determination of whether an employee has established 'abnormal working conditions' is a question of law" subject to appellate review. *Payes*, 79 A.3d at 552. Here, the WCJ's finding of an abnormal working condition did not involve a fact intensive analysis and, thus, entitled to less deference. *Payes*, 79 A.3d at 549 n.3.

Notably, the WCJ agreed with Employer that the fire was something Claimant could anticipate and prepare for but believed, incorrectly, that *Payes* rendered those factors irrelevant.[11] WCJ Interlocutory Order, 7/15/2019, Finding of

---

[11] Rather, there must be a connection of that training to the employment event, which was absent in *Payes* and *Kochanowicz II*. There was no training for a robbery done with a gun pointed to the head, and there is no way to train for the possibility that a person will run out in front of a vehicle traveling at a high rate of speed on an interstate. Here, by contrast, the training fit the unusual but not extraordinary truck fire.

15

Fact ¶11. In reality, the WCJ's finding that Claimant experienced an abnormal working condition constituted a conclusion of law, which is subject to a *de novo* standard of review.

Consistent with our precedent, our Supreme Court's directives, and the undisputed testimony credited by the WCJ, we conclude that Claimant did not experience an "extraordinarily unusual and distressing" event that constituted an abnormal working condition under *Payes*, 79 A.3d at 556.

## Conclusion

For the reasons above, we hold that the Board erred in affirming the WCJ's finding and conclusion that Claimant's "mental-mental" injury arose from an abnormal working condition. Claimant acknowledged that he could anticipate a truck fire and had been trained on how to respond. The relatively minor fire he experienced was quickly extinguished and was not an "extraordinarily unusual and distressing" employment event for a truck driver. *See Payes*, 79 A.3d at 556.

Accordingly, we reverse the Board's adjudication.

_____
MARY HANNAH LEAVITT, President Judge Emerita

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Premium Transportation Staffing,    :
Inc.,    :
               Petitioner    :
   :
               v.    :     No. 1329 C.D. 2022
   :
Robert Welker (Workers'    :
Compensation Appeal Board),    :
             Respondent    :

# **O R D E R**

AND NOW, this 30th day of November, 2023, the September 29, 2022, adjudication of the Workers' Compensation Appeal Board that affirmed the March 17, 2022, decision and order of the workers' compensation judge in the above-referenced matter is REVERSED.

_____
MARY HANNAH LEAVITT, President Judge Emerita